690 A.2d 530

**Alvis Fitzgerald TIMMONS**

v.

**STATE of Maryland.**

**No. 765, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

March 5, 1997.

Denise Oakes Shaffer, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Kathryn Grill Graeff, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellee.

Submitted before MOYLAN, HARRELL and ALPERT, (Retired, specially assigned), JJ.

PAUL E. ALPERT, Justice, Retired, Specially Assigned.

Alvis Fitzgerald Timmons, the appellant, was convicted by a jury in the Circuit Court for Cecil County of possession of cocaine and wearing, carrying, or transporting a handgun. The court imposed consecutive prison sentences of seven years for possession of cocaine and three years for the handgun violation. It also ordered appellant to pay a $1,000.00 fine. In this appeal, appellant argues, in essence, that:

I.   The trial court erred in denying his motion to suppress, and

II.  The evidence was insufficient to support his convictions.

We find no merit in either of these arguments and affirm the judgments of the trial court.

### Facts

Appellant was a passenger in a car that was stopped for speeding on Interstate 95 in Cecil County. The State trooper who made the stop, Trooper James Nolan, Jr., worked with a canine that was trained to indicate for drugs. Trooper Nolan ascertained that none of the three occupants of the car had a valid driver's license. All three seemed "excessively nervous." The driver and the other passenger gave the trooper conflicting stories as to the group's travel plans. Trooper Nolan therefore decided to have the dog scan the car. When the dog gave a positive alert, the trooper searched the vehicle.

During the search, Trooper Nolan discovered, in the glove compartment, four rounds of ammunition for a .38 caliber handgun. He subsequently found, beneath the hood of the car near the windshield, a .38 caliber Taurus handgun wrapped in a towel. Next to the handgun, he found a locked currency bag, which contained six rare coins, $80.00 in currency, and two plastic bags. One of the plastic bags contained 72.1 grams of powder cocaine. The other contained 106.5 grams of cocaine base. All three occupants of the car were arrested. Only appellant was ultimately charged in the case.

# I

## Motion to Suppress

Prior to trial, defense counsel moved to suppress certain statements made by appellant to Trooper Nolan which linked appellant to the contraband. Defense counsel conceded that appellant had no standing to challenge the canine scan of the car and the resulting search. Counsel argued, as appellant argues in this appeal, that Trooper Nolan unlawfully ordered appellant out of the car and unlawfully detained him, and that the incriminating statements were the "fruit" of those unlawful acts. *See generally Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Appellant now seems to suggest that, had he not been "unlawfully detained," he would have left the scene before the contraband was lawfully discovered and would never have made the comments that linked him to the items.

In reviewing the denial of a motion to suppress, we make our own independent constitutional appraisal. We make the appraisal by reviewing the law and applying it to the peculiar facts of the particular case.... When the facts are in dispute, we accept them as found by the trial judge unless he is clearly erroneous in his judgment on the evidence before him. In ascertaining whether he is clearly erroneous, we give "due regard to the opportunity of the trial court to judge the credibility of the witnesses," as commanded by Md. Rule 8–131(c).... [T]he relevant facts

which we consider "are limited to those produced at the suppression hearing ... which are most favorable to the State as the prevailing party on the motion." ...

*Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239 (1990) (citations omitted). *See also Munafo v. State,* 105 Md.App. 662, 669, 660 A.2d 1068 (1995).

Trooper Nolan was the sole witness at the hearing on the motion to suppress. Nolan explained that, after he stopped the speeding vehicle, he asked the driver, Patrick Alexander, for his license and registration and Alexander informed him that he "had forgotten his license at home." Alexander provided the trooper with documents that indicated that the car had been rented to the wife of the front seat passenger, Tony Miller. Nolan asked Alexander to step out of his car and to accompany him to his patrol car so that he could ascertain the status of Alexander's license. While in the trooper's car, Alexander stated that he and the others were returning home to North Carolina from New York, where they had just spent two days. Upon ascertaining that Alexander had not merely forgotten his driver's license but did not have a license, Nolan went back to the car to determine whether one of the passengers was a licensed driver who could legally operate the vehicle.

Nolan first approached Miller and asked Miller to step out of the car. Miller told the trooper that the trio had just spent three or four hours in New York and was returning to North Carolina. Miller further stated that he did not have a driver's license.

Nolan then spoke with appellant, who showed him a North Carolina license. The trooper asked appellant to accompany him to his patrol car, where he ran a check and determined that appellant's license had been suspended.[1]

---

1. Nolan explained that he asked Miller to step out of the car because Miller seemed "nervous." Nolan did not suggest that he asked appellant to step out of the car for a similar reason.

Nolan testified that, because of the conflicting stories he had received from Alexander and Miller and because he deemed all three men to be "excessively nervous," he got the police dog from the rear of his patrol car and conducted a canine scan.[2] The dog placed his nose directly on the front grill of the car and sat, which signalled Nolan that the dog had detected the odor of a controlled dangerous substance. Nolan then conducted a search of the vehicle, starting with the interior. He noticed a wallet and some keys on the back seat but did not seize them. He then found a silver dollar, dated 1897, beneath the back seat. The trooper started to give the coin to Miller but appellant interjected that it belonged to him and that he was a coin collector. As a result, Nolan gave the silver dollar to appellant.

Nolan then resumed his search and found the ammunition in the glove compartment. Shortly thereafter he found, under the hood of the car near the windshield, the handgun and the locked currency bag. At that point, Nolan testified, he arrested and handcuffed all three occupants of the car. Nolan then cut open the bag and found what later proved to be cocaine, as well as six rare coins and $80.00 in cash.

According to Nolan, appellant then asked for his wallet and keys which, appellant indicated, were on the rear seat of the car. As he was preparing to hand appellant the keys, Nolan noticed that one of them looked like a key for a currency bag. Nolan inserted the key into the bag's lock and found that the key readily opened the lock. The trooper then took the key off of the key ring and handed the remaining keys to appellant. Appellant declined to accept them, however, and stated that they were not his.

Nolan correctly observed that, because the car was stopped on Interstate 95, appellant and Miller, the other passenger, could not leave on foot. *See* Md. Transp. Code Ann. § 21–509(a) and (j) (1992 Repl.Vol.) ("... [A] pedestrian may not

---

**2.** Another officer who had spotted the stopped vehicle arrived just before the canine scan was conducted and remained on the scene.

walk along a controlled access highway" unless, in the event that an emergency "prevents the movement of a vehicle," the pedestrian "goes only to the nearest telephone or other source of assistance"). He testified to the effect that, but for that fact, the two passengers would have been free to leave up until the point that the canine scan was conducted. Nolan explained that, even if the canine scan had not been conducted, he would have had to arrange to have the car towed since none of its occupants had a valid driver's license.

On this, the trial court determined that, when Trooper Nolan learned that Alexander was driving without a license, he had a right to detain Alexander and the vehicle. The court found that appellant and the other passenger were "free to go" but observed: "I don't know where they would go in the middle of I–95 at that time in the evening." As the trial court determined, this case was not one involving the automatic removal of passengers from a car during a routine traffic stop. *See Maryland v. Wilson,* —— U.S. ——, ——, 117 S.Ct. 882, ——, 137 L.Ed.2d 41 (1997) (holding that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop," but expressly declining to comment upon whether the officer may forcibly detain the passengers).

As defense counsel conceded below and appellant tacitly concedes in this appeal, appellant had no standing to contest the canine scan and the subsequent search of the car. The trial court determined that Nolan did not detain appellant until "after the dog alerted." It explained that at that point "there was probable cause to do anything." Nolan searched the vehicle and found, *inter alia,* the handgun and cocaine, which provided probable cause for the arrest of appellant and the others. Thus, the court explained, appellant was lawfully seized when he told Nolan that the 1897 silver dollar was his

and when he later requested his wallet and keys from the back seat.[3]

Our independent constitutional appraisal of the record of the suppression hearing convinces us that the trial court's findings of fact were not clearly erroneous and that its conclusions of law, based on those findings, were correct. Trooper Nolan testified that he did not detain appellant until after the positive canine scan. The trooper indicated that, prior to the scan, he merely sought to determine whether appellant or the other passenger had a valid driver's license so that the car could be driven away. There was no suggestion that Nolan did anything more than request appellant's cooperation in that matter. Nor was there any suggestion that appellant's cooperation was not entirely voluntary. Although, for obvious safety reasons, appellant could not leave the scene, no seizure within the meaning of the Fourth Amendment took place prior to the scan.

There is no dispute that, once the canine scan was conducted, Nolan had a reasonable articulable suspicion to detain appellant and the others and to search the vehicle. *Cf. Gadson v. State,* 341 Md. 1, 8, 668 A.2d 22 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1704, 134 L.Ed.2d 803 (1996) and *Snow v. State,* 84 Md.App. 243, 248, 578 A.2d 816 (1990) (both explaining that a positive alert by a certified drug-sniffing canine is sufficient to establish probable cause to search). Nor is there any dispute that, once the contraband was found inside the vehicle, the trooper had probable cause to make the arrests. *See generally Doering v. State,* 313 Md. 384, 403, 545 A.2d 1281 (1988) ("The rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion"). As appellant was properly detained when he claimed ownership of the 1897 silver dollar and stated that he was a coin collector, and was properly arrested when he

---

**3.** Appellant does not contend that his statements were the product of improper custodial interrogation.

**418**

requested the wallet and keys that were on the back seat, the trial court properly denied the motion to suppress.

## II

### Sufficiency of the Evidence

█ Appellant further contends that the evidence was insufficient to support his convictions. Appellant posits that the State failed to establish that he knew of or possessed either the drugs or the handgun.

> [W]hen a sufficiency challenge is made, the reviewing court is not to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt"; rather, the duty of the appellate court is only to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*State v. Albrecht*, 336 Md. 475, 479, 649 A.2d 336 (1994) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (emphasis in original)).

█ In cases involving controlled dangerous substances, possession means "the exercise of actual or constructive dominion or control over a thing by one or more persons." Md. Ann.Code art. 27 § 277(s) (1992). "The accused, in order to be found guilty, must know of both the presence and the general character or illicit nature of the substance. Of course, such knowledge may be proven by circumstantial evidence and by inferences drawn therefrom." *Dawkins v. State*, 313 Md. 638, 651, 547 A.2d 1041 (1988). In cases involving wearing, carrying, or transporting a handgun, there is "a rebuttable presumption that the person is knowingly transporting the handgun. . . ." Md. Ann.Code art. 27, § 36B(b) (1996 Repl. Vol.).

Trooper Nolan testified at trial, as he testified at the hearing on the motion to suppress, that appellant stated that he was a coin collector and claimed ownership of the 1897

silver dollar that was found beneath the rear seat of the car. The trooper testified that, after the arrests, appellant requested that the trooper give him his wallet and keys and indicated that they were on the back seat. Sergeant Alan Michael, who arrived on the scene just before the canine scan was conducted, testified at trial that he, too, heard these statements by appellant. The State presented evidence that six rare coins were found in the currency bag with the cocaine, and one of the keys from the ring on the back seat fit the bag's lock.

Appellant took the stand and denied making any of the comments attributed to him. He insisted that he was not a coin collector, that the keys on the back seat were not his, and that he had no knowledge of the contraband hidden in the car. "It is axiomatic," however, "that the weight of the evidence and the credibility of witnesses are always matters for the jury to determine when it is the trier of facts." *Binnie v. State,* 321 Md. 572, 580, 583 A.2d 1037 (1991).

The testimony of Trooper Nolan and Sergeant Michael as to appellant's statements established a direct link between appellant and the currency bag in which the cocaine was found. Similarly, the testimony established a link between appellant and the handgun, in that the gun was located right next to the currency bag. We are thus satisfied that "any rational trier of fact could have found ... beyond a reasonable doubt" that appellant knew of and possessed the cocaine and the handgun. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis omitted).

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.