791 A.2d 968

**Earmon Alvin WALLACE, Sr.,**

v.

**STATE of Maryland.**

**No. 2395, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

Feb. 27, 2002.

674

Bradford C. Peabody, Asst. Public Defender (Steven E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Shannon E. Avery, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Frank Weathersbee, State's Atty. for Anne Arundel County, Annapolis, on the brief), for appellee.

Submitted before DAVIS, KENNEY, DEBORAH S. EYLER, JJ.

KENNEY, Judge.

Appellant, Earmon Alvin Wallace, Sr., was convicted at a bench trial on an agreed statement of facts in the Circuit Court for Anne Arundel County of possession with intent to distribute cocaine.[1] Appellant asks a single question on appeal:

> Did the trial court err in denying the motion to suppress the evidence seized from appellant?

---

1. He was sentenced by the court to twenty years imprisonment, all but five years suspended, to be served without the possibility of parole. He was also ordered to serve five years probation upon his release from prison.

We answer in the affirmative and reverse appellant's conviction.

## Factual and Procedural Background

At the suppression hearing, the State called three Annapolis City Police Officers: Jessica Hertik, Elizabeth Nelson, and Jonathan Supko. Officer Hertik testified that at approximately 3:00 a.m. on July 9, 2000, she was driving her marked police car eastbound on Forest Drive in Annapolis, Maryland. As she approached Hilltop Lane, a forty mile per hour road, she observed a four-door Buick driving at a high rate of speed in the opposite direction. She made a U-turn and accelerated to 90 m.p.h. to catch up to the Buick. In addition to speeding, Officer Hertick saw the vehicle run a red light. Officer Hertick then activated her emergency equipment and the Buick pulled over.

Officer Hertik stopped behind the vehicle and exited her car, approaching the driver's side of the Buick. Sitting inside the vehicle was the male driver, a male front seat passenger, and three back seat passengers, appellant and two women. Officer Hertik recognized appellant and two of the other passengers from a previous encounter, although she did not say how. She informed the driver that she had stopped the vehicle for speeding and not stopping at a traffic light. Officer Hertik requested the driver's license and car registration, and he complied.

When Officer Hertik walked back to her car, she met Officer Nelson, who was on duty with Bosco, her drug detection dog. Officer Hertik explained what had occurred and then proceeded to run a license check and write two tickets. In the meantime, other units had arrived on the scene, and these additional officers [2] watched the Buick while Bosco scanned the vehicle.[3] Bosco made two positive alerts to the

---

**2.** It appears from the testimony that a total of six officers were at the scene.

**3.** Officer Nelson and Bosco had worked together for three years. During that time, they had been through 200 hours of training for

presence of drugs at the rear seam of the driver's side front door. Officer Nelson testified that, because of air currents in the vehicle, there is little correlation between where a canine alerts and where drugs are found in the vehicle.

Officer Nelson advised Officer Hertik, who was still in the process of writing tickets, that Bosco had "made a positive alert on the vehicle." While Officer Nelson placed Bosco in the back of her car, Officer Hertik approached the vehicle to speak with the driver. She informed the driver that she suspected that the vehicle contained drugs and asked the occupants to exit the vehicle so the police could search them.

The occupants were taken out of the car one at a time and searched while the others remained in the car. The other officers at the scene watched the occupants of the car while the searches were being conducted. Officer Supko testified that his actions were not a mere "frisk" or "pat down" but were intended to discover anything suspicious. Officer Supko searched the three males, beginning with the driver. The front seat passenger was searched next.

Officer Supko then searched appellant, who was sitting behind the front passenger seat. During the search "for anything apparent[,][w]eapons and what not[,]" Officer Supko felt a hard object near appellant's groin, which he said he knew was not a gun, knife, or other weapon. Officer Supko handcuffed appellant with his hands behind his back, told him he was "not under arrest at the time[,]" and walked him to a grassy area away from the road. Officer Supko stated that he had handcuffed appellant "just for my safety and his safety."

As they walked, appellant moved his hips in an apparent attempt to shake the object loose. When the officer searched appellant's groin area again, the object was gone. Officer Supko saw, however, something protruding from appellant's left pants leg, which turned out to be a clear plastic baggie

---

certification, in addition to 90 hours each year to maintain their certification.

containing several pieces of suspected cocaine. Appellant was placed under arrest.

The two females were searched after appellant. Officer Hertick searched one of them herself. Only after the occupants were searched did Officer Hertick search the vehicle. She found $1,155 in cash in someone's shorts in the front passenger seat, and a knife in a purse in the back seat. No drugs were found in the car.

Prior to trial, appellant moved to suppress the evidence found on his person. He argued that a canine alert to the presence of drugs in a car, without more, did not give the police probable cause to perform a warrantless search of a passenger. The suppression court disagreed and denied his motion. It is from that ruling that appellant appeals.

## Standard of Review

When reviewing the denial of a motion to suppress, the record at the suppression hearing is the exclusive source of facts for our review. *Lee v. State,* 311 Md. 642, 648, 537 A.2d 235 (1988); *Aiken v. State,* 101 Md.App. 557, 563, 647 A.2d 1229 (1994), *cert. denied,* 337 Md. 89, 651 A.2d 854 (1995). We extend great deference to the fact finding of the suppression judge and accept the facts as found, unless clearly erroneous. *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239 (1990); *Perkins v. State,* 83 Md.App. 341, 346–47, 574 A.2d 356 (1990). We review the evidence in the light most favorable to the prevailing party; in this case, the State. *Riddick,* 319 Md. at 183, 571 A.2d 1239. Nevertheless, we make our own independent constitutional appraisal by reviewing the law and applying it to the facts of the case. *Jones v. State,* 111 Md.App. 456, 466, 681 A.2d 1190, *cert. denied,* 344 Md. 117, 685 A.2d 451 (1996) (*citing Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

## *DISCUSSION*

Appellant argues that the police lacked probable cause to search him based on case law that holds that probable cause to

search a passenger of an automobile does not exist without some linkage to the commission of a crime. The State argues that the trial court properly denied appellant's motion to suppress, asserting that "the dog's behavior signaled the presence of drugs in the car generally. As such, the search of the occupants of the car was fully justified for Fourth Amendment purposes." This is an issue of first impression in Maryland.

### A. The Court's Ruling

The motion court made the following ruling:

For the following reasons, the Court believes the search of the Defendant was lawful based on probable cause.

The Court finds from the facts that the police officer had reasonable grounds and had probable cause to stop the vehicle because she observed the vehicle committing a traffic offense. *Pryor v. State,* 122 Md.App. 671 [716 A.2d 338], *cert. denied,* 352 Md. 312 [721 A.2d 990] (1998). Incidental to the stop it is the police officer's obligation to conduct a routine record check as to the validity of the driver's license and vehicle registration. *Munafo v. State,* 105 Md.App. 662 [660 A.2d 1068] (1995). See, also, *United State[s] v. Shabazz,* 993 F.2d 431 (5th Cir.1993). However, Maryland law demands that a motorist who is subjected to a traffic stop for a minor traffic violation "cannot be detained at the scene of the stop longer than it takes—or reasonably should take—to issue a citation for the traffic violation that the motorist committed." *Pryor,* at 674–675 [716 A.2d 338]. In this case, there is no issue that the Defendant was detained any longer than it would reasonably take to issue a citation. The testimony is clear that Officer Nelson arrived seconds after Officer Hertik stopped the vehicle. In fact, both officers met at the rear of the vehicle in which the Defendant was a passenger, spent ten seconds discussing the matter, and then an additional 30 seconds for the officer to get the dog and walk it around the vehicle. Lastly, Hertik testified she had not even completed the first ticket when

she was advised by Nelson that the dog had alerted on the vehicle.

The only novel issue to be discussed then, is whether probable cause existed for a search of the individuals in the vehicle. We know that when a canine alerts to a vehicle indicating the likelihood of contraband, sufficient probable cause exists to conduct a warrantless search of the vehicle. *Gadson v. State*, 341 Md. 1 [668 A.2d 22] (1995), *cert. denied*, [517 U.S. 1203] 116 S.Ct. 1704 [134 L.Ed.2d 803] (1996). *Accord United States v. Dovali–Avila*, 895 F.2d 206, 207 (5th Cir., 1990); *In Re Montrail M.*, 87 Md.App. [420,] 437 [589 A.2d 1318 (1991)]. What these cases do not address is the right of the police officer to search the passengers of the vehicle with nothing more than the canine alerting to the vehicle.

The Supreme Court, in *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) indicated that, concerning a canine alert, "a positive result would have resulted in his justifiable arrest on probable cause." Page 1329. This was in reference to luggage which had been detained for a canine scan. In addition, the Court of Special Appeals in *Timmons v. State*, 114 Md.[App.] 410 [690 A.2d 530] (1997) at 416 [690 A.2d 530], seemed to agree that once the dog alerted, "there was probable cause to do anything."

Defendants cite *Livingston v. State of Maryland*, 317 Md. 408 [564 A.2d 414] (1989) as authority indicating there was no probable cause to search the passengers in the vehicle. In *Livingston* the court concluded that marijuana seeds located on the front floor of an automobile does not empower an officer with sufficient cause to believe that a back seat passenger has dominion and control over the contraband. Clearly, as the court pointed out, the Fourth Amendment of the United States Constitution guarantees the "right of the people to be secure in their persons ..." U.S. Constitution, Amendment 4. As pointed out in *Livingston*, the result of these protections is that the police ought to obtain a search warrant to conduct a valid search of an individual unless probable cause exists to do so at the scene.

Unlike *Livingston,* the Court believes the dog alerting to drugs in a confined space such as the interior of the '99 Buick coupled with expert testimony that the odor will linger even after these drugs are removed from the vehicle, is sufficient probable cause to search the vehicle and the occupants. (The search of the vehicle revealed no drugs or paraphernalia although money was found in the vehicle which the dog later, at the station, hit upon as having the odor of drugs). Probable cause existed to believe that a). drugs were in the car, and b). that each Defendant had either constructive or actual possession of same. It is the alert on the interior of the car with five passengers that distinguishes this case from *Livingston.*

The Court finds that individuals are clearly "clothed with constitutional protection against an unreasonable search or an unreasonable seizure." *Ybarra v. Illinois,* 100 S.Ct. 338, 444 U.S. 85, 342 [sic] [62 L.Ed.2d 238] (1979). However, even in *Ybarra,* the court indicated "not only was probable cause to search Ybarra absent at the time the warrant was issued, it was still absent when the police executed the warrant." Page 342. Unlike *Ybarra,* in this case the probable cause existed for the police officers to reasonably believe that drugs were in that vehicle or in the vehicle by being on the person of the occupants. "Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Ybarra,* at 342. In the case at bar, the appellate courts have previously stated that the canine scan is probable cause to search and/or seize. As a result, the seizure and the search of the Defendant was based on probable cause.

### B. The Traffic Stop

 Officer Hertik observed that the Buick was obviously speeding and saw it run a red light. The officer having observed the traffic violation, the traffic stop was clearly proper. *Pryor v. State,* 122 Md.App. 671, 679, 716 A.2d 338, *cert. denied,* 352 Md. 312, 721 A.2d 990 (1998) (citing *Goode v.*

*State,* 41 Md.App. 623, 629–30, 398 A.2d 801 (1979)). "The intrusion permitted [in a traffic stop, however,] 'must be temporary and last no longer than is necessary to effectuate the purpose of the stop.' " *Snow v. State,* 84 Md.App. 243, 264, 578 A.2d 816 (1990) (quoting *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)).

 Although Officer Hertik apparently recognized some of the car's occupants, including appellant, from unspecified prior dealings, she immediately began processing two traffic tickets. Officer Nelson, having arrived at the scene virtually simultaneously with Officer Hertik, took the opportunity to have Bosco sniff the outside of the car. This occurred contemporaneously with Officer Hertik's actions in processing the tickets, which she had not completed at the time Bosco alerted. Consequently, there was no undue delay. *See Wilkes v. State,* 364 Md. 554, 576–77, 774 A.2d 420 (2001); *Snow,* 84 Md.App. at 265, 578 A.2d 816.

 A "dog sniff of a vehicle conducted during a lawful detention is not a 'search' within the meaning of the Fourth Amendment." *Gadson v. State,* 341 Md. 1, 8 n. 4, 668 A.2d 22 (1995), *cert. denied,* 517 U.S. 1203, 116 S.Ct. 1704, 134 L.Ed.2d 803 (1996); *In re Montrail M.,* 87 Md.App. 420, 436–37, 589 A.2d 1318 (1991), *aff'd,* 325 Md. 527, 601 A.2d 1102 (1992). *See also United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Accordingly, the actions taken by the officers up to and including the canine sniff [4] of the Buick were proper. We next turn our attention to the actions that occurred after Bosco's positive alert to the car.

### C. Search of Vehicle's Occupants

 The State does not argue that the officers had the right to frisk and that, as a result of the frisk, the presence of

---

**4.** Even if a canine scan were considered a search, appellant, as a passenger, would not have standing to contest it. *Timmons v. State,* 114 Md.App. 410, 416, 690 A.2d 530 (1997).

contraband became readily apparent.[5] The State's argument in this case, rather, is that Bosco's positive alert provided the officers with probable cause to search appellant without a warrant.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment does not denounce all searches or seizures, however, but only those that are unreasonable. *See Carroll v. United States,* 267 U.S. 132, 147, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Wilkes,* 364 Md. at 570, 774 A.2d 420.

 "[A] police officer is generally required to obtain a search warrant to conduct a valid search of an individual. Nevertheless, there are exceptions to this requirement[.]" *Livingston v. State,* 317 Md. 408, 410, 564 A.2d 414 (1989). For example, a search incident to arrest does not require a warrant. *State v. Evans,* 352 Md. 496, 516, 723 A.2d 423, *cert. denied,* 528 U.S. 833, 120 S.Ct. 310, 145 L.Ed.2d 77 (1999) (citing *Illinois v. Rodriguez,* 497 U.S. 177, 185, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)). In addition, if contraband were in plain view on a person, a warrantless search could be conducted. *Livingston,* 317 Md. at 412, 564 A.2d 414. Valid consent is also an exception to the warrant requirement. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973); *Doering v. State,* 313 Md. 384, 401–02, 545 A.2d 1281 (1988). The State does not claim that any of these exceptions are applicable in this case.

---

**5.** "[A]rguments not presented in a brief or not presented with particularity will not be considered on appeal." *Klauenberg v. State,* 355 Md. 528, 552, 735 A.2d 1061 (1999). Thus, we do not address these and other possible arguments which may have been available.

Of the firmly rooted exceptions to the warrant require-
ment, a search incident to lawful arrest is the only one that
authorizes a full-blown search of a person for the purpose of
discovering evidence. (The frisk component of a stop-and-
frisk authorizes the pat-down of the clothing surface for the
limited purpose of detecting the presence of a weapon.)
Probable cause to believe that a person is carrying evidence
does not justify a warrantless search of the person any more
than probable cause to believe a home contains evidence
justifies a warrantless search of a home. Only places or
things enjoying a lesser expectation of privacy, such as
automobiles, are vulnerable to probable-cause-based war-
rantless searches for the purpose of discovering and seizing
evidence of crime.

That the police have probable cause for a lawful arrest of
a person does not in and of itself justify a warrantless
search of that person. The search must be incident to an
arrest itself. It may not be incident merely to good cause
to make an arrest.

*State v. Funkhouser,* 140 Md.App. 696, 724–25, 782 A.2d 387
(2001).

Accordingly, to substantiate a search of the passen-
gers in the vehicle, Bosco's positive alert must have provided
the police with probable cause to arrest the occupants of the
car, and they must have actually arrested the occupants. In
this case, appellant was specifically advised that he was not
under arrest, and the State does not argue that the police
were conducting a *Terry* frisk.[6] It is undisputed that, until
Bosco alerted to the car, there was no probable cause to
search the car or to make any arrests. Although the presence
of Officer Nelson and Bosco fortuitously allowed the police to
conduct a valid canine scan, Officer Hertik did not appear to

6. Despite Officer Supko's contention that appellant was not under
arrest, it might not have been unreasonable for appellant to believe that
he was, in fact, under arrest. As indicated, however, the State does not
argue that the canine scan creates the probable cause to arrest and that
the search was incident to that lawful arrest. No one but appellant was
arrested.

be suspicious of the presence of contraband, as she indicated by proceeding immediately to prepare the traffic tickets. On the other hand, once a drug detection dog alerted, the police had probable cause to search the interior physical parts of a vehicle. *Gadson,* 341 Md. at 8, 668 A.2d 22 (1995); *In re Montrail M.,* 87 Md.App. at 437, 589 A.2d 1318. *Place,* 462 U.S. 696, 103 S.Ct. 2637; *United States v. Lovell,* 849 F.2d 910, 913 (5th Cir.1988).

■■■ The police may detain the vehicle's occupants while the search is conducted, *Timmons v. State,* 114 Md.App. 410, 417, 690 A.2d 530 (1997), and pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the officers may ask questions to further the investigation, and they may frisk the vehicle's occupants if they suspect that one or more of them is armed with a weapon. *Pryor,* 122 Md.App. at 679, 716 A.2d 338 (quoting *Derricott v. State,* 327 Md. 582, 587, 611 A.2d 592 (1992)).[7]

Both the Court of Appeals and this Court have implied in recent cases, albeit in *dicta,* that a drug dog's positive alert may give rise not only to the right to search a car but the right to arrest an occupant without a warrant. *Wilkes,* 364 Md. at 587 n. 24, 774 A.2d 420; *Funkhouser,* 140 Md.App. at 722, 782 A.2d 387. In both of these cases, however, the driver was the sole occupant of the car. Neither court has yet had the opportunity to address directly the issue of whether a positive canine alert alone can provide the police with probable cause to arrest a passenger in the vehicle and to conduct a search incident to that arrest.

### D. Cases Relied on by the Motion Court

Before we discuss the case law in other jurisdictions, we will discuss the cases relied on by the trial court in denying the motion to suppress.

---

**7.** Again, the State argues only probable cause to search and not that the search of appellant's person was allowable under *Terry.*

The court first cited *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229, in support of the right to search passengers in this situation. We do not find this case persuasive because of the factual distinctions and the manner in which passengers are treated under Maryland law, which we discuss in more detail below. Royer was in Miami International Airport when a canine alerted to the presence of narcotics in his luggage. The Supreme Court held that "a positive result would have resulted in his justifiable arrest on probable cause." *Royer*, 460 U.S. at 506, 103 S.Ct. 1319. Royer was, of course, not a passenger in an automobile at the time of the dog sniff. Moreover, because he had been seen carrying the luggage, there was a direct connection between the luggage and Royer. In this case, the scent could not be traced to a particular individual in the car.

*Timmons*, 114 Md.App. 410, 690 A.2d 530, requires more discussion. Timmons was a passenger in a car that had been stopped for speeding. None of the three occupants in the car had a valid driver's license, all appeared "excessively nervous," and gave conflicting stories. One of the troopers decided to conduct a canine scan of the car, and the dog gave a positive alert. The troopers searched the car and uncovered an 1897 silver coin, which one of the troopers started to give to the other passenger, but which Timmons claimed as his. In addition, they found ammunition, a handgun, and a locked currency bag, which contained cocaine, six rare coins, and $80.00 in cash. The occupants of the car were then arrested.

The motion court below seized on language in *Timmons* quoting the Circuit Court for Cecil County, which, in denying appellant's motion to suppress, stated that once the dog alerted " 'there was probable cause to do anything.' " *Timmons*, 114 Md.App. at 416, 690 A.2d 530. The motion court here interpreted our opinion as "seem[ing] to agree" with this statement by the Circuit Court for Cecil County. We said:

Our independent constitutional appraisal of the record of the suppression hearing convinces us that the trial court's findings of fact were not clearly erroneous and that its conclusions of law, based on those findings, were correct.

Trooper Nolan testified that he did not detain appellant until after the positive canine scan. The trooper indicated that, prior to the scan, he merely sought to determine whether appellant or the other passenger had a valid driver's license so that the car could be driven away. There was no suggestion that Nolan did anything more than request appellant's cooperation in that matter. Nor was there any suggestion that appellant's cooperation was not entirely voluntary. Although, for obvious safety reasons, appellant could not leave the scene, no seizure within the meaning of the Fourth Amendment took place prior to the scan.

There is no dispute that, **once the canine scan was conducted, Nolan had a reasonable articulable suspicion to detain appellant and the others and to search the vehicle.** *Cf. Gadson* [, *supra,*] and *Snow* [, *supra,*] (both explaining that a positive alert by a certified drug-sniffing canine is sufficient to establish probable cause to search). Nor is there any dispute that, **once the contraband was found inside the vehicle,** the trooper had probable cause to make the arrests.[8] *See generally Doering* [, *supra,*] ("The rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion"). As **appellant was properly detained when he claimed ownership of the 1897 silver dollar and stated that he was a coin collector, and was properly arrested when he requested the wallet and keys that were on the back seat, the trial court properly denied the motion to suppress.** *Timmons,* 114 Md.App. at 417–18, 690 A.2d 530 (emphasis supplied). This language does not suggest that the positive canine alert alone gave probable cause to arrest Timmons. Rather, it justified the search of the car, and it was the fruits of that subsequent search that formed the basis for the lawful

---

8. All three occupants of the vehicle were arrested, but only the arrest and subsequent search of Timmons was at issue in the case.

arrest of the occupants of the car. Timmons claimed various articles from inside the car, including his wallet, the coin, and some keys, although he later disclaimed ownership when one of the troopers realized that one of the keys opened up the currency bag.

The facts of *Timmons* are very different from the facts of this case. In *Timmons*, the officers found drugs inside the car **before** they touched the occupants of the vehicle. In fact, it does not appear as though the defendants in *Timmons* were even subjected to a *Terry* frisk prior to the search of the car. We believe the trial court reads *Timmons* too broadly.

### D. Positive Canine Alert and Passenger Searches

A search disclosed four jurisdictions that have addressed the issue of whether a positive canine alert in itself provides the police with probable cause to arrest passengers in an automobile. If a positive canine alert provides probable cause to effect a warrantless arrest, a search incident to that arrest is proper.[9]

#### 1. Florida

In *Woodbury v. State*, 730 So.2d 354 (Fla.App.) (en banc), *review denied*, 743 So.2d 17 (Fla.1999), the car in which appellant Woodbury was a passenger was stopped, not for a traffic violation, but based on a description of the car given to police by the family of Linda Anderson, who they had reported as missing. Anderson's family described her car and indicated that she might have loaned it to someone in exchange for drugs, as she had done in the past. After stopping the car, the driver advised the police that it was, in fact, Anderson's car but that she had Anderson's authority to drive it.

One officer ran a check on the driver's license and the vehicle's temporary tags, while another conducted a canine

---

9. Searches incident to arrest are deemed to be proper without further justification. *See, e.g., Carter v. State,* 367 Md. 447, 467, 788 A.2d 646 (2002) (and cases cited therein).

scan of the car's exterior. The dog made a positive alert. "The occupants of the vehicle, including Woodbury, were searched and cocaine was found on Woodbury." *Woodbury*, 730 So.2d at 355. The court found that the

> officer acted reasonably in stopping the vehicle to determine if it belonged to Ms. Anderson and, if it did, to see if she was safe. The officer further had reason to check the driver's license of the driver once she acknowledged that the car belonged to Ms. Anderson, and also to check the tag. The canine search was conducted within a reasonable time after the vehicle was stopped and the "dog alert" justified the search of the vehicle.

*Woodbury*, 730 So.2d at 355.

With respect to Woodbury's argument that there was no reasonable suspicion to justify a search of his person, the majority found the issue to be unpreserved and, therefore, waived on appeal. *Woodbury*, 730 So.2d at 355. One of the concurring judges and the dissenting judge, however, opined that the positive dog sniff did not provide probable cause to search Woodbury.

In his concurring opinion, Judge Warren H. Cobb noted that there was no showing that the vehicle itself was searched. *Woodbury*, 730 So.2d at 355 (Cobb, J. concurring). Although Judge Cobb agreed that the issue was not preserved, he also stated that

> [t]he core question here should have been whether a dog alert on a vehicle, in and of itself, authorizes the arrest and search of all of the occupants of that vehicle. The answer is no. *See United States v. Di. Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); *Rogers v. State*, 586 So.2d 1148 (Fla. 2d DCA 1991).

*Woodbury*, 730 So.2d at 356. Both *Di Re* and *Rogers* concerned the ability of police officers to extend searches of automobiles to searches of passengers.[10]

---

10. *Rogers* did not address this specific issue, because a positive canine alert resulted in a search of the driver's van, not his person. The

Judge Cobb also provided the following "advice" to police faced with a situation like the one in *Woodbury:*

> Had the vehicle been searched, based on the dog alert, and drugs had been found therein, that may have supplied probable cause to arrest and search the person of one or more occupants, depending on the location of the drugs in the vehicle. But it would not have automatically authorized the police to arrest and search the persons of all of the occupants absent a further dog alert on the individual occupants. If no drugs had been found in the vehicle, none of the occupants would have been subject to arrest and search absent an individual dog alert on that occupant's person.

*Woodbury,* 730 So.2d at 355 n. 1.

Judge Charles M. Harris dissented from the opinion, stating that he believed the court should have reached the issue of whether the positive canine alert provided probable cause to search the passengers of the car, because Woodbury properly raised the issue below. *Woodbury,* 730 So.2d at 358 (Harris, J. dissenting). Judge Harris stated:

> In our case, the police stopped a vehicle which they believed belonged to one who they had been informed used illegal drugs. A canine alert on the vehicle should not have come as a surprise. The alert did not raise a reasonable suspicion that Woodbury, neither the owner nor the driver of the vehicle, was engaged in criminal activity. There should be some independent basis for searching the occu-

---

search uncovered contraband, which then provided probable cause to arrest the driver. After the driver's arrest, police searched the passenger's purse. She had previously denied consent to search her purse, but after the driver's arrest, she handed the purse over after a demand by a police officer. The passenger was not arrested at that point. The majority found that the search of her purse would be valid only "on the basis that the police officer had probable cause to arrest [the passenger] for actual or constructive possession of the cocaine found in the van." After reviewing the totality of the circumstances, the majority in *Rogers* found that the police lacked probable cause to suspect that the passenger was in constructive possession of the cocaine and that the search of her purse was illegal. *Rogers,* 586 So.2d at 1152. *Di Re* will be discussed later in the opinion.

pants of a vehicle, particularly a non-owner or non-driver of the vehicle, detained because of an exterior canine alert. Admittedly, I have found no direct authority on this point (for or against it), but logic suggests its validity. All drugs concealed on an occupant of a vehicle must necessarily be located within the vehicle. However, even assuming the alert indicates the current, as opposed to past, presence of drugs, all drugs located within the vehicle would not necessarily be concealed on an occupant or any particular occupant. A canine alert on the exterior of the vehicle supports the general proposition that drugs may well be located within the vehicle, but not the more specific proposition that the drugs are concealed on a particular occupant thereof. . . .

If the facts justify it, there can be a constitutional basis for searching the passengers. There appears to be no reason why an independent canine sniff of the occupants themselves could not have been conducted during the vehicle search. The passengers have no expectation of privacy in the air space around them. If their body gives off an odor of illegal narcotics discernable by a trained dog during a period in which the occupants are not illegally detained, this appears to be their bad luck. As stated in *U.S. v. Morales–Zamora*, 914 F.2d 200, 204–05 (10th Cir.1990), in discussing two United States Supreme Court decisions:

Together, [*United States v.*] *Jacobsen* [, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) ] and *Place* [, *supra,*] make clear that there is no intrusion on legitimate privacy interests (and hence no "search") where the only information revealed [by a canine sniff] is limited to controlled items. *See U.S. v. Colyer*, 278 U.S.App.D.C. 367, 878 F.2d 469 at 474 [ (1989) ] (*Place* and *Jacobsen* stand for the proposition that a possessor of contraband can maintain no legitimate expectation that its presence will not be revealed).

The record before us does not reflect that the vehicle was searched. Indeed, the drugs that alerted the canine may well remain inside the door panel or under the seat of the

vehicle. Nor does the record reflect an independent canine alert on the occupants before they were subjected to the search of their person. They were searched only because they were "visitors" in a vehicle suspected of containing drugs.

*Woodbury*, 730 So.2d at 359 (footnote omitted).

Although Judge Harris may have found no authority for his decision, his remarks supported a similar conclusion reached by the Court of Appeals of Illinois.

### 2. Illinois

In *People v. Fondia*, 317 Ill.App.3d 966, 251 Ill.Dec. 553, 740 N.E.2d 839 (2000) (Cook, J., dissenting), Fondia had been a passenger in a car driven by Sharon Russell. Officers David Shaffer and Douglas Gallagher each spoke with Russell and the other passenger, Wayne Aikens, and then proceeded to "conduct computer inquiries and warrant checks" on all three of the car's occupants. Officer Shaffer also requested a canine unit.

The canine unit arrived approximately two minutes after being requested, and the dog gave a positive alert to the car. The occupants were ordered out of the car, and Officer Gallagher "informed [Fondia] that the dog had alerted and that Gallagher was going to search him. When [Fondia] responded that he did not want to be searched, Gallagher told him that he did not have the right to refuse." Gallagher found a metal tube that he believed to be a crack pipe, handcuffed Fondia, and completed the search. No contraband was found pursuant to searches of Russell and Aikens. *Fondia*, 251 Ill.Dec. 553, 740 N.E.2d at 841.

The majority held:

The officers here knew that the dog had alerted to the car, thus providing them with probable cause to believe that controlled substances were somewhere either within the car or on the person of one or more of its occupants. After the officers ordered the occupants out of the car, Gallagher told defendant that he was going to search him and then placed

his hand into defendant's left-front pocket. Gallagher felt a metal tube and removed it. However, before Gallagher searched defendant's person, he could have—and should have—had the dog sniff defendant to see if the dog would again alert. See *United States v. Place*, [*supra*,] (a canine sniff is not a search for purposes of the fourth amendment).

If a dog sniff of defendant had occurred and the dog alerted, then probable cause would have existed to search defendant's person. If, on the other hand, the dog did not alert after sniffing defendant but did alert as to one of the car's other occupants or as to the now-unoccupied car interior, then no basis would have existed to search defendant's person. By not conducting additional dog sniffs of defendant or the car's other occupants (which the officers had it entirely in their power to do), the officers willfully denied themselves this additional, critical information that would have sharpened their focus on whom to search, leaving themselves in a position of "willful ignorance."

This posture of "willful ignorance" dissipates the reasonableness of the police conduct in this case, given the nature of that conduct, which was a search of defendant's person, not merely a container within the car. In [*Wyoming v. Houghton*, 526 U.S. 295, 303, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) ] the Supreme Court wrote of the "unique, significantly heightened protection afforded against searches of one's person" and quoted the following from *Terry v. Ohio*, [*supra*, 392 U.S. at 24–25, 88 S.Ct. 1868]: " 'Even a limited search of the outer clothing * * * constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience.' "

We find support for our conclusion in the dissenting opinion in *Woodbury* [, *supra*,] (Harris, J., dissenting).... *Fondia*, 251 Ill.Dec. 553, 740 N.E.2d at 842–43.

In dissent, Justice Robert W. Cook stated that there was "no evidence in the record which indicates that a canine sniff of individuals is feasible, and the appellate prosecutor, during

oral argument, avowed that it was not, because the dog may be confused by body odors and proximity to a human being." *Fondia*, 251 Ill.Dec. 553, 740 N.E.2d at 844–45 (Cook, J., dissenting). Justice Cook also stated that "just as there was probable cause to believe there were drugs in the car, there was also probable cause to believe the three individuals in the car possessed drugs on their persons." *Id.*

### 3. Ohio

The Court of Appeals of Ohio recently considered this issue in *State v. Kelly,* 2001 WL 1561543, 2001 Ohio App. LEXIS 5444, slip opinion (Ct.App.Ohio Dec. 7, 2001) (Grendell, J. dissenting).[11] Kelly was one of two passengers in a car that was stopped for "failure to dim high beams" and an exhaust system violation. When Officer Dustin Svab approached the car, he became suspicious that the occupants were attempting to conceal something, because it appeared as though the female passenger had "placed her hand under her shirt." In addition, Officer Svab knew Kelly from an unspecified "prior police encounter."

When Officer Svab called in the traffic information, he requested a canine unit. He then began preparing a written warning. After the canine unit arrived, the dog gave a positive alert to the car. Officer Svab and Patrolman Mark Cooper, the canine handler, had the occupants get out of the car and patted them down. After performing an initial pat search of Kelly, Officer Svab asked if

they could untie "the top of his boots to check the inside * * * because on a prior occasion [when Officer Svab] dealt with [appellee, he] had found a crack pipe in the rear of one of the cruisers immediately after [appellee] was released from the cruiser and [he] hadn't detected it when [appellee] went into the car." On that prior occasion, appellee's boot was not checked, so they checked it to make sure there was no knife or anything. Patrolman Cooper located a long

11. Judge Diane V. Grendell dissented, but we have been unable to locate a copy of that dissent.

slender gold glass tube, which was a crack pipe, and appellee was placed under arrest.

*Kelly*, at *1, 2001 Ohio App. LEXIS at *3–4.

In this case, unlike *Woodbury* and *Fondia*, *supra*, the motion court suppressed the evidence. The appellate court stated:

> In the case *sub judice*, Officer Svab and Patrolman Cooper had probable cause to search the interior of the car once the canine alerted its handler to the presence of drugs. However, neither officer searched the interior of the car. Instead, they had the occupants exit the automobile and searched them. There was no claim the dog "indicated" that appellant had drugs on his person.
>
> * * *
>
> On the other hand, in the situation before us, Officer Svab testified that he felt that because of movement by the passengers in the auto, they might have been carrying a weapon. Therefore, he had all three occupants exit the vehicle. A pat down search was conducted on the driver and the female passenger, but nothing was found. After an initial pat down of appellee, the officers requested that he unlace his boots for a further search. Officer Svab testified that based on his prior experience with appellee, he suspected that appellee may have had a knife or other contraband in his boots. Following the arrest of appellee on a prior occasion, Officer Svab claimed that he found a crack pipe in his cruiser after taking appellee to the Ravenna Police Department for processing purposes. However, there is nothing in the record before us to establish that appellee was the individual who placed that contraband on the floor of Officer Svab's cruiser. Further, his prior experience only involved a suspicion of drug paraphernalia, not weapons. As previously indicated, per *Terry*, the pat down could only initially address safety issues, not generally [sic] contraband issues.

Based on the initial pat down of appellee, the record does not demonstrate that anything was "immediately apparent" to either Officer Svab or Patrolman Cooper as contraband, and thus, its subsequent removal was not justified. It is our view that the officers searched appellee more thoroughly based solely on a prior experience Officer Svab had had with appellee. Thus, there were no "exigent circumstances" to justify conducting a further warrantless search of appellee's person.

*Kelly*, at *3–4, 2001 Ohio App. LEXIS at *8–11.

### d. *United States Court of Appeals for the Tenth Circuit*

The Tenth Circuit, and the United States District Court for the District of Kansas, have held that a positive canine alert to a vehicle provides the police with probable cause to search the vehicle's passengers.

In *United States v. Klinginsmith*, 25 F.3d 1507 (10th Cir. 1994), *cert. denied*, 513 U.S. 1059, 115 S.Ct. 669, 130 L.Ed.2d 602 (1994), appellant Klinginsmith was a passenger in a car driven by Fredrick Aldon Magee. The men were driving on I–35, a highway that runs in a northeasterly direction from Wichita, Kansas, to Kansas City, Kansas. State troopers had devised a scheme to try to catch narcotics traffickers. Outside Melvern, Kansas, they erected signs reading "NARCOTIC CHECK LANE AHEAD." The sign was a ruse, but police hoped that, if narcotics traffickers saw the sign, they would exit the highway at a particular exit.

When Magee exited the highway, troopers pursued his car. Magee eventually stopped the car in a gas station, and Troopers Simone and Heady asked questions of both Magee and Klinginsmith. The two gave divergent stories as to where they had come from and where they were going. Both consented to a search of the car. In the meantime, a canine unit arrived on the scene, and, before any search was undertaken, Magee's car was scanned, the dog making a positive alert. "At this point, the officers handcuffed Magee and Klin-

ginsmith[,]" and the troopers eventually located a large amount of marijuana in the trunk of the car.

The Tenth Circuit held that "when the dog 'alerted,' there was probable cause to arrest Magee and Klinginsmith and to search the vehicle without a warrant under the automobile exception even had there been no prior consent." *Klinginsmith,* 25 F.3d at 1510 (citing *United States v. Stone,* 866 F.2d 359, 364 (10th Cir.1989)).

*Stone,* the case relied on by the Tenth Circuit, concerned a traffic stop of Stone's car with apparently two passengers in the car. In that case, unlike *Klinginsmith,* the positive canine alert led to a search of the car, rather than to a search of the occupants. *Stone,* 866 F.2d at 361, 364.

In a more recent decision, the U.S. District Court for the District of Kansas, relying on circuit precedent, reaffirmed the holding in *Klinginsmith. United States v. Garcia,* 52 F.Supp.2d 1239, 1253 (D.Kan.1999). *Garcia* was a case in which the driver was arrested after a positive canine alert:

> Even in the absence of the other information known by the troopers, once the drug dog alerted on the two vehicles, the troopers had probable cause to arrest Garcia and the other occupants of the two vehicles.[12] *See United States v. Shayesteh,* 166 F.3d 349 (10th Cir.1998) ("An alert by a certified narcotics sniffing dog provides probable cause for a search and arrest.") (citing *United States v. Williams,* 726 F.2d 661, 663 (10th Cir.), *cert. denied,* 467 U.S. 1245, 104 S.Ct. 3523, 82 L.Ed.2d 830 (1984)), *cert. denied,* 526 U.S. 1045, 119 S.Ct. 1347, 143 L.Ed.2d 510 (1999).

*Garcia,* 52 F.Supp.2d at 1253. *Shayesteh* involved a case in which the driver was the sole occupant of the car. *Williams* was a luggage case more similar to *Royer* than to automobile cases.

---

12. Garcia was driving a Toyota Tercel and was traveling with a white minivan in a sort of caravan. It is unclear from the facts whether Garcia was alone in the Tercel, although it is clear that the van had passengers.

### E. Distinction Between Drivers and Passengers

In addition to looking at the case law in our sister states and in the federal courts, we recognize a distinction between the drivers of automobiles and passengers in the car. This distinction was first set out in *United States v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948).

*Di Re* is not a canine alert case but it has influenced the discussion in such cases. In *Di Re*, an informant told the investigating officer that he was to buy counterfeit gasoline rations from a person named Buitta at a certain place and time. The officer followed Buitta's car to the appointed place, where it stopped. When the officer approached the car, he found Buitta in the driver's seat, the informant in the back seat, and another man, Di Re, in the front passenger seat. The informant held two counterfeit gasoline ration coupons in his hand. The three men were arrested and transported to a police station for questioning. After being questioned, Di Re was searched and the police recovered one hundred counterfeit coupons on his person.

Before the Supreme Court, the government argued, among other things, that the search of the car was justified because the police reasonably believed that the car carried contraband, and therefore, the search of Di Re's person was justified. The government relied on the *Carroll* doctrine, named after *Carroll v. United States*, 267 U.S. 132, 153, 155–56, 45 S.Ct. 280, 69 L.Ed. 543 (1925), which provides an exception to the warrant requirement for searches of automobiles so long as there is probable cause that the vehicle contains contraband.

The *Carroll* doctrine is grounded in the exigency of searching an automobile, which can be easily moved out of the jurisdiction, without obtaining a warrant. *Id.* No additional exigency must be shown for a warrantless search of an automobile once probable cause that the vehicle contains contraband is established. *Maryland v. Dyson*, 527 U.S. 465, 466–67, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (citing *United States v. Ross*, 456 U.S. 798, 809, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)). The *Di Re* Court rejected the government's

argument because there was no evidence that the car was searched. The Court then went on to state, in *dicta:*

> We see no ground for expanding the ruling in the *Carroll* case to justify this arrest and search as incident to the search of a car. We are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled.

*Di Re,* 332 U.S. at 587, 68 S.Ct. 222. .

The Court went on to remark:

> The argument that one who "accompanies a criminal to a crime rendezvous" cannot be assumed to be a bystander, forceful enough in some circumstances, is farfetched when the meeting is not secretive or in a suspicious hide-out but in broad daylight, in plain sight of passers-by, in a public street of a large city, and where the alleged substantive crime is one which does not necessarily involve any act visibly criminal. If Di Re had witnessed the passing of papers from hand to hand, it would not follow that he knew they were ration coupons, and if he saw that they were ration coupons, it would not follow that he would know them to be counterfeit. Indeed it appeared at the trial to require an expert to establish that fact. Presumptions of guilt are not lightly to be indulged from mere meetings.

*Di Re,* 332 U.S. at 593, 68 S.Ct. 222.

The Court finally concluded:

> We meet in this case, as in many, the appeal to necessity. It is said that if such arrests and searches cannot be made, law enforcement will be more difficult and uncertain. But the forefathers, after consulting the lessons of history, designed our Constitution to place obstacles in the way of a too permeating police surveillance, which they seemed to think was a greater danger to a free people than the escape of some criminals from punishment. Taking the law as it

has been given to us, this arrest and search were beyond the lawful authority of those who executed them.

*Di Re*, 332 U.S. at 595, 68 S.Ct. 222.

The Court of Appeals has long recognized that there must be some basis for a suspicion that a suspect is engaging in criminal behavior. *Sugarman v. State*, 173 Md. 52, 195 A. 324 (1937). Sugarman had been arrested for disorderly conduct [13] and placed in a holding cell after he was searched. When the cell was searched after Sugarman's departure, the police found papers indicating that Sugarman was involved in an illegal lottery operation. The Court of Appeals held, however, that, although the cell had been cleaned out prior to Sugarman's arrival, the officer who had searched Sugarman prior to placing him in his cell had not found the papers on his person. Because the "record is devoid of testimony tending to show any possible connection between the prisoner and the pieces of cardboard found in the crack of the cell bench," the Court held that the evidence should have been suppressed. *Sugarman*, 173 Md. at 58–59, 195 A. 324.

The Court of Appeals first cited *Sugarman* in conjunction with *Di Re* for this same proposition, that there must be a nexus between suspicion of criminal behavior and a defendant, in *Hayette v. State*, 199 Md. 140, 144, 85 A.2d 790 (1952). This Court cited *Di Re* in this same context in *Baziz v. State*, 93 Md.App. 285, 297, 612 A.2d 296 (1992), *cert. denied*, 329 Md. 110, 617 A.2d 1056 (1993), in noting that "mere physical proximity to a crime cannot support a finding of probable cause."

In a specific application of this principle, the Court of Appeals first distinguished between passengers and drivers of automobiles in reviewing a case involving a police officer's

---

**13.** The Court of Appeals had many problems with Sugarman's arrest, since his arrest initially proceeded from a "hunch" by a police officer that Sugarman was engaged in wrongdoing. The officer demanded that Sugarman accompany him to the station. Sugarman attempted to bribe the officer and, at some point, fled from him. The Court found that the officer was not lawfully performing his duties, and that the officer's behavior tainted the entire subsequent contact with Sugarman.

automatic assumption that all of the occupants of a vehicle were guilty of wrong doing as the result of the presence of contraband in the car. *Livingston, supra,* 317 Md. 408, 564 A.2d 414. Livingston was a passenger in the backseat of a car that was stopped for speeding. State Trooper Lawrence Nelson detected two marijuana seeds on the right front floor-board of the car. All of the vehicle's occupants were arrested, and Trooper Nelson subsequently found cocaine and marijuana in Livingston's pocket. Livingston, having unsuccessfully moved to suppress this evidence, was eventually convicted.

The Court of Appeals held that the stop was valid and that the marijuana seeds were located as the result of a plain view search, which provided the trooper with probable cause to believe that a misdemeanor was being committed. *Livingston,* 317 Md. at 413, 564 A.2d 414. The Court found, however, that this did not automatically translate into a finding of constructive possession by Livingston, who was a passenger in the back seat of the car: "Merely sitting in the backseat of the vehicle, Livingston did not demonstrate to the officer that he possessed any knowledge of, and, hence, any restraining or directing influence over two marijuana seeds located on the floor in the front of the car." *Livingston,* 317 Md. at 415–16, 564 A.2d 414 (footnote omitted) (citing *Di Re,* 332 U.S. at 587, 68 S.Ct. 222).

The Court of Appeals, in the context of a challenge to the sufficiency of the evidence, discussed *Livingston* in *White v. State,* 363 Md. 150, 767 A.2d 855 (2001). White was the passenger in a car driven by Kendrick Charity. The car was stopped and, eventually, searched. The officer found a box of pots and pans in the trunk, and, when he opened the box, he found a large quantity of cocaine. Both occupants of the vehicle were arrested.

The Court of Appeals, after examining *Livingston,* held that "the circumstantial evidence upon which the State's case rested was insufficient as a matter of law to support, beyond a reasonable doubt, that Petitioner exercised dominion or control over the cocaine found inside the pots and pans box in the

trunk of Charity's automobile." *White,* 363 Md. at 166–67, 767 A.2d 855. The Court of Appeals recognized that there was, at most, some cause for suspicion, but that, ultimately, the presence of the cocaine in the trunk was simply insufficient to link White to it.

In a recent case, this Court has likewise recognized the distinction between passengers and drivers and the difference in control over the contents of a vehicle that each has. *Johnson v. State,* 142 Md.App. 172, 788 A.2d 678 (2002). In that case, Johnson was a passenger in a car that was stopped because it matched the description of a car provided in a broadcast of a possible car theft. The officer who stopped the vehicle confirmed that the tag number matched the number from the broadcast, and when he approached the car, he smelled marijuana. Through the vehicle's window, he saw what he believed to be marijuana on the gear shift between the driver and the front seat passenger, appellant. Both denied knowledge of the marijuana, but both were arrested. Additional marijuana was later recovered from the car's ashtray. In addition, police found a glycine bag containing what turned out to be 1.5 grams of crack cocaine pursuant to a search of appellant that took place at the police station.

Appellant moved to suppress the evidence, arguing that there was no probable cause for his arrest. We stated:

> Here, [Officer] Trams not only smelled burnt marijuana, but he also saw a marijuana bud in plain view. We find that Trams had probable cause to believe that a crime was being committed in his presence. The issue, however, is not quite that elementary. Johnson's argument is premised upon the notion that Trams had no probable cause pertaining to *him*—the passenger of the vehicle. Even if there was probable cause pertaining to the driver, who was operating and "controlling" the vehicle, it may not necessarily follow that there was probable cause to believe that the passenger was involved in whatever crime that may have been committed by the driver. Accordingly, having determined that probable cause existed as to the driver in this case, we must

nonetheless continue with our analysis of probable cause to determine if it existed as to appellant as well.

*Johnson,* 142 Md.App. at 188, 788 A.2d 678.

We then proceeded to analyze the case in light of *Livingston* and held that there was some factual basis to believe that Johnson was a participant in criminal activity. That analysis relied heavily on Office Trams' testimony of an overwhelming scent of marijuana as well as the fact that the marijuana was in plain view and equally accessible to both the driver and appellant. *Id.,* 142 Md.App. at 194–95, 788 A.2d 678.

■ Accordingly, as in all cases involving warrantless searches and arrests, a court has to analyze the issue of probable cause from a totality of the circumstances. A passenger in a vehicle generally is not perceived to have the kind of control over the contents of the vehicle as does a driver. Therefore, there must be some link between the passenger and the criminal conduct in order to provide probable cause to either search or arrest the passenger.

## F. CONCLUSION

■ Recognizing conflict in the decisions in this area as well as prior Maryland case law on passengers, we are persuaded by the decisions holding that a canine alert to a vehicle, without more, does not establish probable cause to arrest the passengers in the vehicle.

We note that the Court of Appeals made the following statement in *Wilkes,* 364 Md. at 587 n. 4, 774 A.2d 420:

Moreover, some jurisdictions have held that once a drug dog has alerted the trooper to the presence of illegal drugs in a vehicle, sufficient probable cause existed to support a warrantless arrest. *See United States v. Klinginsmith,* 25 F.3d 1507, 1510 (10th Cir.) ("When the dog 'alerted,' there was probable cause to arrest [defendants] ...."), *cert. denied,* 513 U.S. 1059, 115 S.Ct. 669, 130 L.Ed.2d 602 (1994); *United States v. Williams,* 726 F.2d 661, 663 (10th Cir.1984) ("[A] drug sniffing dog's detection of contraband in luggage

'itself establishes probable cause, enough for the arrest, more than enough for the stop.' " (alteration in original) quoting *United States v. Waltzer,* 682 F.2d 370, 372 (2d Cir.1982), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983)).

*Wilkes* involved a canine scan in a case where the sole occupant of the vehicle was the driver, and we do not believe that the Court of Appeals intended this *dicta,* notwithstanding the citation of *Klinginsmith,* to encompass a ruling on cases such as the one at bar, where passengers are searched as the result of a positive canine alert.[14] Both *Williams* and *Waltzer* concern luggage cases, which, as explained above in connection with *Royer,* we have found to be factually distinct from automobile cases.

Moreover, in coming to the conclusion that a positive canine search provides probable cause not only to search the car but to arrest everyone in it, the Tenth Circuit bases its decision on distinguishable cases. We also believe that it ignores the need to show a link between passengers of a car and suspicion of wrongdoing, as explained in *Di Re, supra,* and our own cases.

■ In this case, there was evidence of the commission of a crime when Bosco gave a positive alert to the Buick. This alert permitted a search of the vehicle, but, without anything more particular to link any one passenger in the car, including appellant, to the drugs smelled by Bosco, the search of each individual passenger absent an arrest based upon probable cause was improper.

**JUDGMENT REVERSED AND REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY ANNE ARUNDEL COUNTY.**

---

**14.** *Cf. Funkhouser,* 140 Md.App. at 722–23, 782 A.2d 387, speculating that the Court of Appeals cited "with implicit approval" to *Klinginsmith* and noting that *Klinginsmith* stands for the proposition that a positive canine scan may provide probable cause to arrest a driver and the occupants of the vehicle.