930 A.2d 1099

**In re CALVIN S.**

**No. 607, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Aug. 31, 2007.

518

520

Brian M. Saccenti (Nancy S. Forster, Public Defender, on the brief), Baltimore, for appellant.

Brian S. Kleinbord (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Panel: SALMON, ADKINS and MEREDITH, JJ.

MEREDITH, J.

This case arises out of a warrantless search of a minor, Calvin S., by officers of the Salisbury Police Department after the officers observed the 17–year old smoking a cigarette.[1] Upon searching Calvin's person to see if he had any additional tobacco in his possession, the officers found a plastic bag containing five rocks of crack cocaine, and charged Calvin with narcotics violations. The Circuit Court for Wicomico County, sitting as a juvenile court, denied Calvin's motion to suppress the cocaine, concluding that the search did not violate the

---

1. The use or possession of a tobacco product by a minor is prohibited by Maryland Code (2002), Criminal Law Article ("CL"), § 10–108. A violation "is a civil offense" CL 10–108(d), for which a citation may be issued. CL § 10–108(e).

Fourth Amendment because the police were looking for contraband. Subsequently, the circuit court entered a delinquency judgment against Calvin. The sole question presented in this case is whether probable cause to believe an individual is committing a civil offense provides a constitutionally valid basis for a warrantless search of the individual's person. We answer that question in the negative. Accordingly, we shall reverse the judgment of the Circuit Court for Wicomico County.

### Facts and Procedural History

On October 10, 2004, at approximately 1:45 a.m., officers King and Underwood of the Salisbury Police Department observed a young man, Calvin S., riding his bicycle on the wrong side of the road, without a headlight, in violation of traffic regulations for bicycles. As the officers approached Calvin to inform him of the traffic violations, they noticed that he was smoking a cigarette and appeared to be under 18 years of age. In the course of a brief discussion with the officers, Calvin admitted that he was 17 years old. After confirming that Calvin was underage for lawful possession of cigarettes, the officers jointly frisked and searched Calvin for the purpose of discovering and confiscating any additional tobacco products Calvin might have had on his person. Officer King described the basis for the search as follows:

[Defense Counsel]: So at the time that you saw, or you stopped Calvin, saw the cigarette, you wrote no citation?

[Officer King]: No.

[Defense Counsel]: And at that point you decided to search [Calvin] to see if he had more tobacco on his person?

[Officer King]: Yes, sir.

[Defense Counsel]: Okay. Was that the sole reason for your search of him?

[Officer King]: Yes, sir.

[Defense Counsel]: Okay. So, you didn't suspect him of having any weapons of any kind or being a danger to you?

[Officer King]: No.

Officer Underwood testified similarly:

[Defense Counsel]: Okay. And do you also agree with Officer King that the reason he was pulled over was he was going the wrong way down a street on a bicycle?

[Officer Underwood]: Yes, Sir.

[Defense Counsel]: And did you see Calvin S. smoking?

[Officer Underwood]: Yes, I did.

[Defense Counsel]: Did you ask Calvin if he had any other tobacco on his person?

[Officer Underwood]: Not that I recall.

[Defense Counsel]: Did you or Officer King ask him to volunteer any tobacco that he had on his person?

[Officer Underwood]: Not that I recall.

[Defense Counsel]: So at that point a search was initiated to see if he had more tobacco?

[Officer Underwood]: Yes, sir.

[Defense Counsel]: And would you agree with Officer King that Calvin S. was not handcuffed—

[Officer Underwood]: That's correct.

[Defense Counsel]:—when the search took place?

[Officer Underwood]: That's correct.

[Defense Counsel]: And would you also agree that you felt, you didn't feel that you were in danger of Calvin at that time?

[Officer Underwood]: No, I did not.

[Defense Counsel]: And there was no citation written for the bicycle violation?

[Officer Underwood]: No, sir. He was verbally advised of the traffic laws by Officer King.

Upon searching Calvin's front pants pocket, one of the officers found a small plastic bag containing five small rocks suspected to be crack cocaine.

On December 3, 2004, the State filed a juvenile delinquency petition, charging Calvin with possession of cocaine, possession

of cocaine with intent to distribute, possession of drug paraphernalia, and possession of a tobacco product by a person under the age of 18. On January 11, 2005, an adjudicatory hearing was held before the Master. The Master concluded that the State had proven all four counts in the juvenile petition beyond a reasonable doubt, and recommended to the circuit court that Calvin be found delinquent, subjected to electronic monitoring, and placed in a special program for juvenile delinquents.

Calvin filed exceptions to the Master's recommendations, and the circuit court held a *de novo* adjudicatory hearing on March 18, 2005. At the hearing, Calvin made an oral motion to suppress the cocaine on the ground that the observed civil violation—specifically, underage possession of tobacco products—did not give the police officers probable cause to conduct a warrantless search of Calvin's person. Consequently, Calvin argued, the search of his person was unreasonable under the Fourth Amendment and the court should suppress the crack cocaine as the fruit of an unconstitutional search. The circuit court held the motion to suppress *sub curia.*

On March 22, 2005, the court entered an order and memorandum of opinion concluding that the search was constitutional and denying the motion to suppress. The court found Calvin guilty of the four counts alleged in the juvenile petition, and entered a finding that Calvin was a delinquent child. On April 1, 2005, the circuit court held a disposition hearing. At the conclusion of the hearing, the circuit court placed Calvin on conditional release with electronic monitoring, pending a placement in a juvenile facility. On April 29, 2005, Calvin filed a notice of appeal.

### Standard of Review

In reviewing the denial of a motion to suppress evidence, Maryland appellate courts are limited to the record before the circuit court at the suppression hearing. *Carter v. State,* 367 Md. 447, 457, 788 A.2d 646 (2002). We consider the evidence presented at the suppression hearing, as well as all inferences reasonably drawn therefrom, in the light most

favorable to the State, and "[o]rdinarily, we will defer to the factual findings of the suppression hearing judge." *Myers v. State*, 395 Md. 261, 274, 909 A.2d 1048 (2006). As this Court recently explained: "We extend great deference to the findings of the hearing court with respect to first-level findings of fact and the credibility of witnesses unless it is shown that the court's findings are clearly erroneous." *Daniels v. State*, 172 Md.App. 75, 87, 913 A.2d 617 (2006) (citing *Reynolds v. State*, 130 Md.App. 304, 313, 746 A.2d 422 (1999), *cert. denied*, 358 Md. 383, 749 A.2d 173, *cert. denied*, 531 U.S. 874, 121 S.Ct. 178, 148 L.Ed.2d 122 (2000)).

Although we grant deference to the facts found by the suppression hearing court, we review questions of law *de novo*. *Carter, supra*, 367 Md. at 457, 788 A.2d 646. Furthermore, "[w]here, as here, [appellant] raises a constitutional challenge to a search or seizure, we must make an independent constitutional evaluation by reviewing the relevant law and applying it to the unique facts and circumstances of the case." *Id.*

## Discussion

### I. The Motion to Suppress

The parties do not dispute that the officers observed Calvin smoking a cigarette, in violation of CL § 10–108, which provides: "A minor may not ... use or possess a tobacco product or cigarette rolling paper." A "minor" is defined by CL § 1–101(g) as "an individual under the age of 18 years." Violation of CL § 10–108(c)(1) "is a civil offense," for which "[a] law enforcement officer authorized to make arrests shall issue a citation...." CL § 10–108(e). A minor who violates CL § 10–108 is "subject to the procedures and dispositions provided in Title 3, Subtitle 8A of the Courts Article." CL § 10–108(d).

Maryland Code (1974, 2006 Repl. Vol.), Courts & Judicial Proceedings Article ("CJP"), § 3–8A–10(*l*) sets forth the procedure to be followed by the Department of Juvenile Services upon notification that a juvenile has received a citation for possession of tobacco products. Section 3–8A–10(*l*) provides:

*Citation authorized under § 10–108 of the Criminal Law Article—Permissible action.*—(1) If the intake officer receives a citation authorized under § 10–108 of the Criminal Law Article, the intake officer may:

> (i) Refer the child to a smoking cessation clinic, or other suitable presentation of the hazards associated with tobacco use;
>
> (ii) Assign the child to a supervised work program for not more than 20 hours for the first violation and not more than 40 hours for a second or subsequent violation; or
>
> (iii) Forward the citation to the State's Attorney.

(2) The intake officer shall forward the citation authorized by § 10–108 of the Criminal Law Article to the State's Attorney if the child fails to comply with a smoking program referral or a supervised work program assignment described under paragraph (1) of this subsection.

If the charge proceeds to a hearing and is sustained, the juvenile court can impose similar penalties pursuant to CJP § 3–8A–19(e)(3)(ii).

With respect to the role of police officers in enforcing CL § 10–108(c)(1), the statute provides: "A law enforcement officer authorized to make arrests shall issue a citation to a minor if the law enforcement officer has probable cause to believe that the minor is committing or has committed a violation of this section."[2] CL § 10–108(e). Once Calvin admitted to the officers that he was seventeen years old, the officers clearly had probable cause to believe that Calvin was violating CL § 10–108(c)(1). The issue before us is whether the commission of a civil violation justifies a warrantless search of the suspect's person. We conclude that it does not.

Calvin contends that the officers' search of his person for additional cigarettes violated his right under the Fourth

---

**2.** "Citation" is defined by Md. Code (1974, 2006 Repl. Vol.), Courts & Judicial Proceedings Article, § 3–8A–01 (f) as "the written form issued by a police officer which serves as the initial pleading against a child for a violation and which is adequate process to give the court jurisdiction over the person cited."

Amendment of the United States Constitution to be free from unreasonable searches and seizures. Calvin argues that probable cause to believe that he was committing a civil violation does not provide a constitutional basis for a warrantless search of one's person, and therefore the hearing court erred in denying his motion to suppress the cocaine.

 The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Supreme Court has explained that, under the protections afforded by the Fourth Amendment, "[w]herever a man may be, he is entitled to know that he will remain free from unreasonable searches and seizures." *Katz v. United States,* 389 U.S. 347, 374, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).[3]

 The hearing court in this case concluded that the officers' search of Calvin fell within the exigent circumstances exception to the warrant requirement, and said, in its memorandum of opinion:

The Court finds that there was probable cause for Officers King and Underwood to believe that the Respondent was in possession of contraband, and they therefore had the right to search the Respondent's person. Given that the police had no authority to arrest or detain the Respondent for a

---

3. As we noted in *Muse v. State,* 146 Md.App. 395, 402, n. 7, 807 A.2d 113 (2002): "The protections of the Fourth Amendment are applicable to the States by virtue of the Fourteenth Amendment, *see Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and its provisions are construed *in pari materia* with those of Article 26 of the Maryland Declaration of Rights. *See Scott v. State,* 366 Md. 121, 139, 782 A.2d 862 (2001). Constructions of the federal amendment by the United States Supreme Court are controlling authority. *See generally, Arkansas v. Sullivan,* 532 U.S. 769, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001)."

violation of CL § 10–108, there were exigent circumstances to justify a warrantless search of the Respondent.

The State argues that the circuit court correctly concluded that cigarettes in the possession of a minor are "contraband" because such possession is prohibited by law, and that the officers were permitted to search Calvin's person for additional contraband.

■ Although warrantless searches are presumptively unreasonable, "because the touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City, Utah v. Stuart,* —— U.S. ——, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650 (2006). One such exception recognized by the Supreme Court is the "exigent circumstances" exception, which provides that "a warrantless search and seizure does not violate the Fourth Amendment when law enforcement officers are faced with exigent circumstances such that there is a 'compelling need for official action and no time to secure a warrant.'" *Wengert v. State,* 364 Md. 76, 85, 771 A.2d 389 (2001) (quoting *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978)).

■ "Exigent circumstances" are defined as "'those in which a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay a search until a warrant could be obtained.'" *Wengert,* 364 Md. at 85, 771 A.2d 389 (quoting *United States v. Robertson,* 606 F.2d 853, 859 (9th Cir.1979)). Regardless of the circumstances or the applicability of an exception to the warrant requirement, however, law enforcement officers must have probable cause in order to conduct a valid search. *See Longshore v. State,* 399 Md. 486, 501, 924 A.2d 1129 (2007).

■ When a defendant moves to suppress evidence allegedly obtained in violation of the Fourth Amendment, "[t]he burden is on the State to establish exigent circumstances that overcome the presumptive unreasonableness [of a warrantless search]." *Id.* In *Gorman v. State,* 168 Md.App. 412, 422, 897 A.2d 242 (2006), in the context of a warrantless entry into a

suspect's home, this Court explained the criteria for concluding that exigent circumstances justify a warrantless search. We said:

> The exception to the warrant requirement for exigent circumstances is narrow, and "[a] heavy burden falls on the government to demonstrate exigent circumstances that overcome the presumptive unreasonableness of warrantless home entries." *Williams v. State,* 372 Md. 386, 403, 813 A.2d 231 (2002). "Exigent circumstances exist when a substantial risk of harm to the law enforcement officials involved, to the law enforcement process itself, or to others would arise if the police were to delay until a warrant could be issued." *Id.* at 402, 813 A.2d 231. Exigent circumstances include "an emergency that requires immediate response; hot pursuit of a fleeing felon; and imminent destruction or removal of evidence." *Bellamy v. State,* 111 Md.App. 529, 534, 682 A.2d 1185, *cert. denied,* 344 Md. 116, 685 A.2d 451 (1996). Certain factors must be considered in the determination of whether exigent circumstances are present: "the gravity of the underlying offense, the risk of danger to police and the community, the ready destructibility of the evidence, and the reasonable belief that contraband is about to be removed." *Williams,* 372 Md. at 403, 813 A.2d 231.
>
> Also "[r]elevant to the determination ... is the opportunity of the police to have obtained a warrant." *Dunnuck v. State,* 367 Md. 198, 205–06, 786 A.2d 695 (2001).
>
> * * *
>
> The determination of exigency is made on a case-by-case basis, considering "the facts as they appeared to the officers at the time[.]" *Williams,* 372 Md. at 403, 813 A.2d 231.

*Id.* at 422, 897 A.2d 242 (alterations in original).

In *Wallace, supra,* this Court examined the criteria for a valid warrantless search of an individual, noting that, "[i]f contraband were in plain view on a person, a warrantless search could be conducted." 142 Md.App. at 684, 791 A.2d 968

(citing *Livingston v. State*, 317 Md. 408, at 412, 564 A.2d 414 (1989)). *Cf. Cox v. State*, 161 Md.App. 654, 660, 871 A.2d 647 (2005) (police who stopped the operator of a bicycle for traffic violations seized the cyclist after they observed him remove from his pocket a clear plastic bag containing gel caps suspected to be heroin). "Contraband" is not defined within the Maryland Criminal Law Article. Black's Law Dictionary defines "contraband" as "goods that are unlawful to import, export, or possess."

But the State's characterization of cigarettes in the possession of a minor as "contraband" strains the limits of statutory interpretation. CL § 10–108 does not classify tobacco products as "contraband," and it contains no authorization for seizure. In various other statutes, the Maryland legislature has specifically defined the instances in which certain items, that may under other circumstances be legally used or possessed, shall be considered "contraband." *See* Maryland Code (1985, 2001 Repl. Vol.), Tax–Property Article ("TP"), § 12–103(b) (defining "contraband tobacco products" as "possessed or sold in the State in a manner that is not authorized under this title or under Title 16 of the Business Regulation Article; or (2) are transported by vehicle in the State by a person who does not have, in the vehicle, the records required by § 16–219 of the Business Regulation Article for the transportation of cigarettes or other tobacco products"); Maryland Code (1957, 2005 Repl. Vol.), Article 2B, § 1–201(a)(5) ("Any vehicle, vessel or aircraft used with the express or implied knowledge, consent or permission of its lawful owner for the purpose of violating any of the provisions of this article relating to the unlawful manufacture of alcoholic beverages or which is used to transport, store or secrete illicit alcoholic beverages shall be deemed contraband[.]"). Furthermore, CL § 10–108 does not authorize police officers to arrest minors for possession of tobacco products. Nor does it authorize officers to seize cigarettes that are in the possession of a minor or to obtain a warrant to search for evidence of a violation of the statute.

 The legislature has neither made possession of cigarettes by a minor a criminal offense, nor indicated in CL § 10–108 an intent that tobacco products in the possession of a minor be classified as "contraband." For us to label the cigarettes in Calvin's possession "contraband" would be contrary to the principles of statutory interpretation.[4] Accordingly, the warrantless search of Calvin's person cannot be justified on the ground that he possessed contraband in plain view of the officers.

 Nor can the search be justified as a legitimate stop-and-frisk under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Before an officer can make a legitimate *Terry* stop, the officer "must have reasonable, articulable grounds to believe that [the suspect] is committing, is about to commit, or has committed a crime." *Ransome v. State,* 373 Md. 99, 113, 816 A.2d 901 (2003) (Raker, J., concurring). A confrontation between an officer and a person who is subject to being issued a citation for a civil offense does not meet the standard for a *Terry* stop absent some other basis to suspect that criminal activity is afoot.

Moreover, even when a *Terry* stop is justified, the officer's right to frisk the individual is limited. In *Wallace, supra,* we stated that the "frisk" component of a "stop-and-frisk" pursuant to *Terry* "authorizes the pat-down of the clothing surface *for the limited purpose of detecting the presence of a weapon."* 142 Md.App. at 684, 791 A.2d 968 (emphasis added). Here, there was no effort made to justify the search as being based

---

**4.** The Court of Appeals has described the limits upon judicial interpretation of statutes as follows:

The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. . . . [A] court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application. . . . [W]e analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect.

*Chow v. State,* 393 Md. 431, 443, 903 A.2d 388 (2006) (citations omitted).

upon a reasonable concern for officer safety. The officers in this case expressly disavowed any notion that they searched Calvin for the purpose of detecting a weapon. To the contrary, both officers testified at the suppression hearing that they did not believe Calvin posed any danger to them at the time they initiated the search. *See Ransome, supra,* 373 Md. 99, 109, 816 A.2d 901 (*"Terry* requires the officer to point to 'specific and articulable facts' justifying his conduct."). *Cf. Graham v. State,* 119 Md.App. 444, 455, 705 A.2d 82 (1998) (detention of passenger was not supported by any articulable concern for officer safety).

Because the officers stated that their sole purpose in searching Calvin was to find more tobacco, the search did not constitute a *Terry* stop-and-frisk, but must instead be treated as a full-blown warrantless search requiring probable cause and exigent circumstances. In *Wallace,* we recognized that, "[o]f the firmly rooted exceptions to the warrant requirement, a search incident to lawful arrest is the only one that authorizes a full-blown search of a person for the purpose of discovering evidence." *Id.* at 685, 791 A.2d 968. Although the officers had grounds to issue a citation to Calvin for possession of tobacco pursuant to CL § 10–108, the officers did not have the authority to arrest Calvin for that civil infraction, and the State concedes, as it must, that this was not a search incident to arrest. *Cf. Swift v. State,* 393 Md. 139, 157–58, 899 A.2d 867 (2006) (improper seizure of person where there was no probable cause to suspect criminal conduct); *Ferris v. State,* 355 Md. 356, 384, 735 A.2d 491 (1999) (after initial purpose of traffic stop is completed, further detention "must be supported by reasonable, articulable suspicion" that "criminal activity was afoot").

 The State relies on Calvin's violation of CL § 10–108 as a valid basis for conducting the search of his person. We conclude, however, that the officers were not permitted to search Calvin incident to the citation issued for possession of tobacco products. The Supreme Court addressed an analogous issue in *Knowles v. Iowa,* 525 U.S. 113, 115, 119 S.Ct.

484, 142 L.Ed.2d 492 (1998), a case in which a police officer stopped a driver for speeding and issued the driver a citation. The officer then proceeded to conduct a full search of the vehicle, finding marijuana and drug paraphernalia. *Id.* The Supreme Court held that the driver's motion to suppress the drug evidence should have been granted, explicitly rejecting the argument that a "search incident to citation" is permitted by the Fourth Amendment. *Id.* at 118, 119 S.Ct. 484.

 In reaching its conclusion that the warrantless search of Calvin's person was lawful, the circuit court relied on the decision of the Supreme Judicial Court of Maine in *State v. Michael M.*, 772 A.2d 1179 (2001). In *State v. Michael M.*, the court concluded that police officers' pat-down search of Michael M., a juvenile whom the officers had observed smoking a cigarette, did not violate the Fourth Amendment. 772 A.2d at 1180. The officers frisked Michael M. with the purpose of searching for more cigarettes, but also recovered a butterfly knife, the possession of which is a crime in Maine. *Id.* Michael M. was charged with trafficking in dangerous knives, and he moved to suppress the knife. *Id.* at 1181. The district court denied the motion to suppress, and after entering a conditional guilty plea, Michael M. appealed. *Id.* The Supreme Judicial Court reasoned that, although possession of tobacco products by minors is a civil offense under Maine law, cigarettes in the hands of a minor are contraband. *Id.* at 1182–83. The court also concluded that exigent circumstances supported the officers' warrantless search of Michael M.'s person, noting that, "exigent circumstances exist when an officer discovers contraband in a person's possession and the evidence might be removed, concealed, or destroyed before a warrant could issue." *Id.* at 1183 (citations omitted).

 In this case, neither probable cause nor exigent circumstances supporting the warrantless search exist. At the suppression hearing, Officer King testified: "It's my personal policy and my personal belief that somebody in possession of tobacco products, specifically a cigarette, there is a good chance that they're going to have another cigarette. They're

an addictive substance and just in my own personal experience, people that carry cigarettes often have more than one." Suspicion that an individual possesses evidence of a civil violation does not justify a warrantless search of the individual's person. In *Wallace v. State,* 142 Md.App. 673, 685, 791 A.2d 968, we said:

> Probable cause to believe that a person is carrying evidence does not justify a warrantless search of the person any more than probable cause to believe a home contains evidence justifies a warrantless search of a home. Only places or things enjoying a lesser expectation of privacy, such as automobiles, are vulnerable to probable-cause-based warrantless searches for the purpose of discovering and seizing evidence of *crime.*

(Emphasis added).

Unlike the offense alleged in *Wallace,* the offense in this case did not rise to the level of a crime. The officers were merely searching Calvin for additional evidence of the civil violation they had already witnessed. Under *Wallace,* probable cause to believe that Calvin possessed additional evidence of a civil violation was insufficient to support a warrantless search of his person.

■ Contrary to the hearing court's conclusion, the officers also lacked exigent circumstances to validate the search. The hearing court concluded that exigent circumstances justified the search of Calvin S.'s person because "the police had no authority to arrest or detain the Respondent for a violation of CL § 10–108[.]" Lack of statutory authority to arrest does not constitute a reasonable basis for conducting a warrantless search of a suspect's person. Were it otherwise, every driver issued a speeding ticket would be subject to a search to explore whether the violator might be in possession of evidence of further infractions of the law. In this case, the officers candidly admitted at the adjudicatory hearing that they had no reason to believe that Calvin posed a danger, or, in the words of *Wengert, supra,* 364 Md. at 84, 771 A.2d 389

(citations omitted), "substantial risk of harm to the persons involved or to the law enforcement process."

Another factor in the exigent circumstances analysis, the gravity of the offense, also weighs against the constitutionality of the search. *Gorman, supra,* 168 Md.App. at 422, 897 A.2d 242. Possession of a cigarette is a relatively minor civil infraction, not an offense for which violators of the statute can receive a jail sentence. Instead, the law provides for dealing with juvenile tobacco violators by requiring enrollment in tobacco education or smoking cessation programs, or by ordering participation in a supervised work program, or by imposing a civil fine of "not more than $25 for the first violation." CJP § 3–8A–19(e)(3)(ii).

A third factor in the exigent circumstances analysis is whether the officers would have had the time and opportunity to properly obtain a warrant prior to the search. *Id.* Maryland Rule 4–601(a) authorizes the issuance of a search warrant "only as authorized by law." Neither CL § 10–108 nor any other statute authorizes law enforcement officers to obtain a warrant to search for tobacco products in the possession of minors. Generally, issuance of search warrants is governed by Md. Code (2001, 2006 Supp.), Criminal Procedure Article, § 1–203, which provides, in relevant part:

> (a)(1) A circuit court judge or District Court judge may issue forthwith a search warrant whenever it is made to appear to the judge, by application as described in paragraph (2) of this subsection, that there is probable cause to believe that:
>
> > (i) a *misdemeanor or felony* is being committed by a person or in a building, apartment, premises, place, or thing within the territorial jurisdiction of the judge; or
> >
> > (ii) property subject to seizure *under the criminal laws of the State* is on the person or in or on the building, apartment, premises, place, or thing.

(Emphasis added.)

Possession of cigarettes by a minor is neither a misdemeanor nor a felony, and nothing in the language of CL § 10–108

or the criminal laws of the State authorizes seizure of cigarettes in the possession of a minor. It would be perverse to permit officers to perform a warrantless search of an individual, on grounds of exigency, to investigate an offense for which the officers could not obtain a search warrant in any event. *Cf. In re Albert S.*, 106 Md.App. 376, 395–96, 664 A.2d 476 (1995) (holding that warrantless arrest of a minor for possession of alcohol was unlawful, because possession of alcohol by a minor is a civil offense and "the officer could do nothing more than issue a citation").

None of the other out-of-state cases cited by the parties are on point with Maryland law and the facts of this case. *State v. Matthew David S.*, 205 W.Va. 392, 397, 518 S.E.2d 396 (1999), is cited for the proposition that police officers may validly search a minor if the officer witnesses the minor in possession of tobacco products. But in *Matthew David S.*, the officer stated that he conducted a pat-down search "for my safety, as well as ... the other people's offices of the surrounding area." *Id.* at 394–95, 518 S.E.2d 396. In contrast, the officers in this case specifically testified that they searched Calvin only for the purpose of discovering more cigarettes. Furthermore, under West Virginia law, possession of cigarettes by a minor is a misdemeanor offense, not a civil violation. W.Va.Code (1998), § 16–9A–3.

We also distinguish this case on its facts from *B.W. v. State of Florida*, 784 So.2d 1219 (2001), in which the District Court of Appeal of Florida upheld an officer's seizure from a minor of two packages of cigarettes, one of which was later found to contain crack cocaine, on the basis that cigarettes in the hands of a minor are contraband. *Id.* at 1219–20. In *B.W.*, the officer saw the cigarettes because the minor pulled one pack of cigarettes out of his pants pocket when searching for his identification, and the other pack of cigarettes was plainly visible to the officer in the minor's front shirt pocket. *Id.* at 1219. The issue in *B.W.* was not whether an illegal *search* occurred, but instead, whether the seizure of cigarettes from a minor was permitted. *Id.* In contrast to the facts of this case, the officer in *B.W.* did not conduct a frisk or other search of

the minor. *Id.* The officer merely asked the minor to give him the cigarette packages which were in plain view, and the minor complied. *Id.*

## II. The Delinquency Finding

 In a delinquency proceeding, the juvenile court must determine whether the State has proven beyond a reasonable doubt that the accused juvenile committed the delinquent act alleged in the delinquency petition. *Albert S., supra,* 106 Md.App. at 398, 664 A.2d 476. Because the warrantless search of Calvin's person was illegal, the circuit court should have suppressed the crack cocaine found in Calvin's pocket. Absent the evidence obtained by the officers in the warrantless search, the juvenile court could not have found that the State proved beyond a reasonable doubt that Calvin was guilty of possession of cocaine, possession of cocaine with intent to distribute, or possession of drug paraphernalia. Consequently, the only remaining charge against Calvin in the delinquency petition is the count alleging that Calvin had possessed a tobacco product in violation of CL § 10–108. This allegation cannot provide a valid basis for a finding that Calvin was a delinquent child. CJP § 3–8A–01(m) defines a "delinquent child" as "a child who has committed a delinquent act and requires guidance, treatment, or rehabilitation." As defined by CJP § 3–8A–01(*l* ), a "delinquent act" is "an act which would be a crime if committed by an adult."

In *In re Charles K.,* 135 Md.App. 84, 98, 761 A.2d 978 (2000), we concluded that "the statutory language defining 'delinquent child' is clear and unambiguous." We reach the same conclusion with respect to the definition of "delinquent act." Possession of tobacco products by an adult is not a crime. Therefore, possession of tobacco products by a minor does not fall within the statutory definition of a "delinquent act," and a juvenile delinquency petition containing a sole allegation that the alleged juvenile possessed tobacco products cannot support a finding of delinquency.

Accordingly, we reverse the judgment of the Circuit Court for Wicomico County.

**THE JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY IS REVERSED. COSTS TO BE PAID BY WICOMICO COUNTY.**