941 A.2d 1238

Donald Leroy STONE

v.

STATE of Maryland.

No. 1447, Sept. Term, 2006.

Court of Special Appeals of Maryland.

Feb. 13, 2008.

430

Christopher R. Hart (Nancy S. Forster, Public Defender on the brief), Baltimore and Williams & Connolly, LLP on the brief, Washington, DC, for Appellant.

Steven L. Holcomb (Douglas F. Gansler, Atty. General on the brief), Baltimore, for Appellee.

Panel: DEBORAH S. EYLER, SHARER and PAUL E. ALPERT, (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, Judge.

In the Circuit Court for Frederick County, Donald Leroy Stone, the appellant, was charged with first degree burglary, second degree assault, possession of a controlled dangerous substance (CDS), possession of drug paraphernalia, and two counts of felony theft. He filed a pretrial motion to suppress tangible evidence and statements he made to the police,

alleging that they were obtained in violation of his Fourth Amendment rights. The court held a suppression hearing and denied the motion.

The case was tried to a jury for two days. The appellant was convicted of second-degree assault, possession of a CDS, possession of drug paraphernalia, and one count of felony theft. He was acquitted of first-degree burglary and the State entered a *nolle prosequi* on the second count of felony theft. The court imposed sentence of 15 years' imprisonment for felony theft, to be served concurrent with two years' imprisonment for second-degree assault and three years' imprisonment for possession of CDS.

The appellant noted a timely appeal. We have combined and rephrased his questions presented as follows:

I. Did the suppression court err in ruling that the police had probable cause to arrest the appellant for burglary and felony theft?

II. Did the suppression court err in ruling that the appellant's arrest was not illegal after it disallowed evidence about the police's electronic surveillance of the appellant?

III. Did the prosecutor improperly vouch for a witness in closing argument so as to require reversal of the second degree assault conviction?

IV. Did the sentencing court err in denying the appellant's request to proceed with counsel of his own choosing?

For the following reasons, we shall affirm the judgments of the circuit court.

## FACTS AND PROCEEDINGS

On October 17, 2005, Maryland State Trooper Richard Bachtell stopped a green Ford pickup truck in which the appellant was seated as a passenger and Joanne Stone, the appellant's wife, was driving. Corporal Jason West of the Frederick County Sheriff's Office and Maryland State Trooper

Martin Speak joined Trooper Bachtell in the stop shortly after it commenced. The three officers arrested the appellant and his wife in connection with the October 6, 2005 burglary of Judith Reisman's house, located at 1840 Mt. Ephraim Road, in Adamstown. In a search of the appellant incident to arrest, Corporal West recovered a glass pipe. Subsequent testing revealed trace amounts of cocaine in the pipe. Ultimately, the appellant was charged with crimes stemming from the Reisman burglary and with possession of a CDS.

After placing the appellant under arrest, Corporal West transported him to the Sheriff's Department headquarters and advised him of his *Miranda* rights.[1] The appellant waived those rights and his right to prompt presentment. Under interrogation by Corporal West, the appellant made certain incriminating statements about the Reisman burglary. As noted above, he eventually filed a motion to suppress evidence, namely the glass pipe, the trace amounts of cocaine, and his incriminating statements.

We shall include additional facts as necessary to our discussion of the issues.

## I.

The following facts, set forth in a light most favorable to the State as the prevailing party, were adduced at the suppression hearing.

On October 6, 2005, Judith Reisman called the Frederick County Sheriff's Office and reported that her house had been broken into. Detective Joseph Rowe investigated Reisman's complaint. Reisman told Detective Rowe that the burglary had to have been carried out that day, sometime between 7:30 a.m. and 2:30 p.m. She described several cameras that had been stolen, including a Nikon.

In investigating the burglary, Detective Rowe checked the Sheriff Office's list of items recently pawned at local pawn shops. He discovered that a Nikon camera similar in descrip-

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

tion to the one missing from Reisman's house had been pawned at Famous Pawn at 12:33 p.m., on October 6, 2005, the same day as the Reisman burglary. On October 14, 2005, at Detective Rowe's request, Reisman met him at Famous Pawn. Corporal West was present as well. The three reviewed the store's surveillance videotape for October 6. It showed a man and a woman entering the store together. The woman was carrying a Nikon camera. Reisman identified the camera as one that had been stolen from her house. She told Detective Rowe that the camera was worth about $1,000.

From prior encounters, Detective Rowe recognized the man on the videotape as the appellant. Famous Pawn's written record of the videotaped transaction showed that Joanne Stone signed a receipt for an outright sale of the Nikon camera for $75.

There was some discrepancy between the testimonies of Detective Rowe and Corporal West as to whether the video-tape showed the appellant physically touching the stolen Nikon camera. According to Detective Rowe, the appellant actually handled the camera. According to Corporal West, the appellant was not actually "in possession of th[e] camera." [2]

On the same day that he viewed the videotape, Corporal West told Trooper Bachtell that the Sheriff's Office was investigating the appellant and his wife in connection with the Reisman burglary. Trooper Bachtell had been investigating the appellant and his wife for another residential burglary in Frederick County, in which a shotgun was stolen. Later that same day, Trooper Bachtell obtained the appellant's cell phone number and contacted his cell phone service provider. At Trooper Bachtell's request, the service provider conducted a "ping" of the appellant's cell phone, which revealed that the phone was "within a two mile radius of the Frederick County Detention Center."

Using that information, Trooper Bachtell drove the roads in the vicinity of the detention center. He located a pickup truck

---

2. The videotape was not in evidence.

registered to the Stones parked at a motel.[3] He, Detective
Rowe, and Corporal West believed at that point "that there
may be another burglary that had been planned." The three
decided to attach a global positioning system ("GPS") tracking
device to the pickup truck parked at the motel.[4]

On October 17, 2005, Trooper Bachtell received transmis-
sions through his cell phone from the GPS device. Using the
transmission, he tracked and located the pickup truck.
Joanne Stone was at the wheel.[5] Trooper Bachtell lost sight
of the vehicle near Woodsboro. Forty minutes later, he saw
Joanne Stone driving another vehicle, a green Ford pickup
truck. (In an earlier interview of Joanne Stone's sister,
Trooper Bachtell had learned that someone in the Stone
family, probably her mother, owned a blue-green Ford pickup
truck.) The appellant was a passenger in the green Ford
pickup truck. Trooper Bachtell stopped the green Ford pick-
up truck and, together with Trooper Speak and Corporal
West, arrested the appellant and his wife for the Reisman
burglary and for felony theft of the Nikon camera.

The suppression court ruled on the evidence before it that
the officers had "probable cause to arrest [the appellant] for
the felony theft of the Nikon camera based upon the testimony
of Deputy Rowe as, again as well as the burglary of the
Reisman residence."

### (a)

 The appellant contends the suppression court erred in
ruling that there was probable cause to support his arrest for

---

3. The record does not identify this particular vehicle with any greater
specificity.

4. Trooper Bachtell testified that a "Sergeant Deiter of the Maryland
State Police" actually attached the GPS device to the pickup truck that
night (or in the early morning hours of October 15, 2005). The record
does not disclose exactly where on the vehicle the device was attached.

5. The record does not reveal whether the appellant was inside the
pickup truck at that point.

the Reisman burglary because the only evidence linking him to that crime was the "conflicting testimony of two police officers regarding the contents of a surveillance video." He argues that the pipe and his incriminating statements to the police were fruits of his illegal arrest and therefore should have been suppressed from evidence.

In reviewing the denial of a motion to suppress evidence, we are limited to the record before the suppression court. *In re Calvin S.,* 175 Md.App. 516, 524–525, 930 A.2d 1099 (2007); *Carter v. State,* 367 Md. 447, 457, 788 A.2d 646 (2002). "We consider the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the prevailing party." *Myers v. State,* 395 Md. 261, 274, 909 A.2d 1048 (2006). " 'We extend great deference to the findings of the hearing court with respect to first-level findings of fact and the credibility of witnesses unless it is shown that the court's findings are clearly erroneous.' " *In re Calvin S., supra,* 175 Md.App. at 525, 930 A.2d 1099 (quoting *Daniels v. State,* 172 Md.App. 75, 87, 913 A.2d 617 (2006)). We review *de novo* the suppression court's application of the law to the facts, and the determination of whether the evidence should be suppressed. *See Swift v. State,* 393 Md. 139, 155, 899 A.2d 867 (2006).

The Fourth Amendment permits a government agent to effect a warrantless arrest of a person in a public place for a felony if the arrest is supported by probable cause. *Massey v. State,* 173 Md.App. 94, 103, 917 A.2d 1175 (2007) (citing *Maryland v. Pringle,* 540 U.S. 366, 370, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003)). Probable cause is a "practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Pringle, supra,* 540 U.S. at 370, 124 S.Ct. 795 (citation omitted).

> Probable cause exists when the police possess reasonably trustworthy information, drawn from the totality of the facts and circumstances of each case, which supports the fair probability that contraband or evidence of a crime will be

found in a particular place or that the suspect has committed a crime.

*Massey, supra,* 173 Md.App. at 104, 917 A.2d 1175. When evaluating whether a police officer had probable cause to arrest without a warrant, "we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Pringle, supra,* 540 U.S. at 371, 124 S.Ct. 795, (quoting *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

Maryland law has long held that "the unexplained, exclusive possession of recently stolen goods permits an inference that the possessor is the thief." *Grant v. State,* 318 Md. 672, 680–81, 569 A.2d 1237 (1990) (citing *Cross v. State,* 282 Md. 468, 480, 386 A.2d 757 (1978)). "And when it is shown that the property was stolen as a consequence of a breaking, the trier of fact may further infer that the thief was involved in the breaking." *Grant, supra,* 318 Md. at 680–81, 569 A.2d 1237 (citing *Brewer v. Mele,* 267 Md. 437, 449, 298 A.2d 156 (1972)).

 "Exclusive possession" of recently stolen goods "does not necessarily require actual manual possession by an accused as long as he obtains a measure of control or dominion over the stolen goods." *Myers v. State,* 165 Md.App. 502, 529–30, 885 A.2d 920 (2005) (citing *Gamble v. State,* 2 Md.App. 271, 275, 234 A.2d 158 (1967)), *aff'd,* 395 Md. 261, 909 A.2d 1048 (2006). "Additionally, possession may be joint." *Myers, supra,* 165 Md.App. at 529, 885 A.2d 920 (citing *Graham v. State,* 6 Md.App. 458, 463, 251 A.2d 616 (1969)). "In other words, as we have consistently held, 'joint possession does not negate the notion of exclusive possession.'" *Myers, supra,* 165 Md. App. at 529–30, 885 A.2d 920 (quoting *Offutt v. State,* 55 Md.App. 261, 263, 463 A.2d 876 (1983)).

On the evidence adduced at the suppression hearing, the police indeed had probable cause to arrest the appellant for the Reisman burglary. Their investigation revealed that the burglary had taken place between 7:30 a.m. and 2:30 p.m. on October 6, 2005, and that on that same day, at 12:33 p.m., the

appellant and his wife, with the stolen Nikon camera in hand, had gone to the Famous Pawn Shop and sold the camera. Reisman had identified the camera as one of the items taken from her house in the burglary. These facts supported a reasonable inference that the appellant was exercising "a measure of control or dominion" over the camera and thus was in joint possession of the camera at the same time that it had been taken from the Reisman house.

Contrary to the appellant's argument, for purposes of probable cause, it does not matter whether the appellant actually was handling the camera at the Famous Pawn store. When the officers observed the appellant in joint possession of the Nikon camera on the videotape within hours of the Reisman burglary, it was reasonable for them to infer that he had participated in the burglary. Accordingly, the police officers' arrest of the appellant for burglary was supported by probable cause.

### (b)

The appellant also contends that the officers did not have probable cause to arrest him for felony theft of the Nikon camera. He argues that to arrest for felony theft in Maryland, the police must have probable cause to believe the value of the property stolen exceeds $500. Md.Code (1957, 2002 Repl.Vol.) § 7–104(g)(1) of the Criminal Law Article ("CL"). The appellant maintains that because his wife sold the camera to Famous Pawn for only $75, and "value" under CL section 7–103(a) is defined as "the market value of the property or service at the time and place of the crime," the suppression court's implicit finding that the value of the camera exceeded $500 was "clearly erroneous." Alternatively, acknowledging that Reisman told Detective Rowe that the camera was worth $1,000, the appellant argues that the issue of the camera's value should be remanded to the suppression court for decision because that court failed, in its ruling, "to specifically determine the value of the camera and resolve the State's conflicting evidence."

 Maryland law is well-established that the owner of personal property is presumptively qualified to testify about the value of his goods. *Pitt v. State*, 152 Md.App. 442, 465, 832 A.2d 267 (2003), *aff'd, State v. Pitt*, 390 Md. 697, 891 A.2d 312 (2006). *See also Cofflin v. State*, 230 Md. 139, 142, 186 A.2d 216 (1962). Reisman's representation to the officers that the camera's value was $1,000 was sufficient to give rise to probable cause to believe that a felony theft had been committed. Moreover, it is implicit in the court's probable cause ruling that it credited the officers' testimony that they believed the camera had a value of $1,000. The suppression court did not err in ruling that the appellant's arrest for felony theft was supported by probable cause.

## II.

At the suppression hearing, Trooper Bachtell testified on direct examination about using the cell phone "ping" and the GPS device to locate the appellant. On cross-examination, defense counsel questioned Trooper Bachtell about the functioning of the cell phone "ping" and the GPS device. Trooper Bachtell described how the "ping" and the GPS device communicated the location of the appellant's cell phone and the Stones' vehicle. The following colloquy ensued:

[DEFENSE COUNSEL]: ... Now who authorized you to put the GPS on? Who decided to put the GPS on?

. . . .

TROOPER BACHTELL: It was a joint decision....

TROOPER BACHTELL: Primarily between Rowe, West, and I, I would say, ah, the decision to do that [attach the GPS device]. Ah, manpower was a, a factor in that and the number of hours that we had already worked was a, was a factor that, that day.

[PROSECUTOR]: Your Honor, I'm gonna object to this line of questioning.

THE COURT: Sustained.

[DEFENSE COUNSEL]: Now ... how you, you asked, let's go back to the telephone. You did a ping. That's basically how you found the vehicle in the first place. . . .

TROOPER BACHTELL: That's definitely correct.

[DEFENSE COUNSEL]: Explain what, to us what this ping is.

[PROSECUTOR]: Again, Your Honor, objection for purpose of this motion to suppress.

. . . .

[DEFENSE COUNSEL]: Your Honor, I, I don't know whether what they've done is legal or not until I ask these questions and that's the purpose of a motion to suppress is to find out the legality of it.

. . . .

[PROSECUTOR]: But [defense counsel] clearly delineated the basis for that and that was that the stop, the arrest of [the appellant] was what was at issue here today. We're going far afield and allowing it as a, at additional discovery if you will. I contend this information has been provided in the discovery.

THE COURT: Well, that's a separate issue, but sustained. I think you've gone far afield on the issues for suppression.

[DEFENSE COUNSEL]: So, well, actually, this all ... has to deal with the illegality of the stop, Your Honor. The information that they used and used as the basis for the stop, all of this information is based upon how they collected information.

. . . .

[DEFENSE COUNSEL]: The goings and comings of the Stones when such a device has not been approved without a court order than [sic] that goes to their illegal—they would not know where they were in order to stop 'em and arrest 'em okay? That's number one. So that's information that's necessary. It goes, it's cumulative towards the issue of the illegal stop, the illegal, ah, arrest in this case.

[PROSECUTOR]: I believe [defense counsel] is trying to bootstrap what he's trying to portray to the Court as an illegal activity by the investigative agencies of Frederick County and the Maryland State Police, arguing to this Court [sic] Trooper Bachtell has testified that other than the location, obtaining the original location of so that he began to pursue the individuals, that that information, put him, if you will, in a position to pursue them. There was various surveillance. There's no indication that stated that as a result of the GPS or the ping location that they obtained information related to the burglaries and the basis for the probable cause for him stopping that vehicle. So I don't see how that squares with what he said, [defense counsel] has laid out as the basis for the motion to suppress.

[DEFENSE COUNSEL]: I disagree one hundred percent with that. . . .

THE COURT: I understand you do. I sustained the objection.

In ruling from the bench, the suppression judge commented that, "[i]t's interesting concerning the placing of the, what's it called, GPS device on the vehicle. But that doesn't make the stop illegal."

The appellant contends that the suppression court abused its discretion by limiting his cross-examination of Trooper Bachtell about the cell phone "ping" and the GPS device. He maintains that if the suppression court had allowed further cross-examination, he may have elicited additional facts to show that the police officers' use of the cell phone "ping" and the GPS device violated his rights under the Fourth Amendment and also violated the Maryland Wiretapping and Electronic Surveillance Act (the "Wiretapping Act"). Md.Code (1977, 2006 Repl.Vol.) § § 10–401 to 10–414 of the Courts and Judicial Proceedings Article ("CJ"). He argues that the cross-examination about the cell phone "ping" and the GPS device were within the scope of direct examination and therefore the court's ruling that the cross-examination was "far afield on the issues of suppression" was in error.

The State responds initially that this issue is not preserved for review. Specifically, the State argues that, at the suppression hearing, defense counsel never argued that the officers' use of the "ping" or the GPS device were "impermissible searches, as he does on appeal. And [the appellant] certainly did not argue that the use of the device violated the [Wiretapping Act]."

On the merits, the State points out that trial judges "retain wide latitude ... to impose reasonable limits on ... cross-examination," *Smallwood v. State,* 320 Md. 300, 307, 577 A.2d 356 (1990) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)), and that a suppression judge has especially wide berth because, as the Court of Appeals has ruled, in a suppression hearing due process protections are "less demanding" than at trial; indeed, a suppression court has broad discretion to decline to apply the Maryland Rules of Evidence. *Matoumba v. State,* 390 Md. 544, 550–52, 890 A.2d 288 (2006). Here, the State maintains, the appellant obtained through cross-examination ample information about the cell phone "ping" and the GPS device to advance a probable cause argument; and any other argument indeed would have been "far afield" of the issue of probable cause, which was the sole topic of the suppression hearing.

The appellant's Wiretapping Act argument is not preserved for review. The appellant did not raise the issue of a statutory violation below; accordingly, the issue is not properly before us. *See* Rule 8–131(a); *Brashear v. State,* 90 Md.App. 709, 720, 603 A.2d 901 (failure to argue particular theory at suppression hearing waives argument), *cert. denied,* 327 Md. 523, 610 A.2d 796 (1992).

Defense counsel did argue below, however, that "[t]he goings and comings of the Stones when such a[GPS] device has not been approved without a court order than [sic] that goes to their illegal—they would not know where they were in order to stop 'em and arrest 'em...." This appears to have been an argument that the officers would not have been able to arrest the appellant but for the allegedly unconstitutional

"search," by means of the cell phone "ping" and the GPS device; and therefore, any evidence seized during the arrest and statements taken pursuant to the arrest were the fruits of the initial illegal "search." Accordingly, the appellant's Fourth Amendment argument in connection with the scope of cross-examination of Trooper Bachtell was raised below and is preserved for review.

"Managing the scope of cross-examination is a matter that falls within the sound discretion of the trial court." *Simmons v. State*, 392 Md. 279, 296, 896 A.2d 1023 (2006). "A trial court does not abuse that discretion when it excludes cross-examination that is irrelevant." *Id.;* Md. Rule 5–402. "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Simmons, supra,* 392 Md. at 296–97, 896 A.2d 1023 (quoting Md. Rule 5–401). Although strict application of the Maryland Rules of Evidence is not mandatory at a suppression hearing, *Matoumba v. State, supra,* 390 Md. at 552, 890 A.2d 288, we nevertheless review a suppression court's evidentiary rulings for an abuse of discretion that "materially prejudice[d] the defendant." *Id.*

The suppression court did not abuse its discretion in cutting short the appellant's cross-examination about the cell phone "ping" and the GPS tracking device because it was unlikely that cross-examination on those points would have produced any relevant evidence. *United States v. Knotts*, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), is controlling.

In *Knotts*, government agents investigating allegations that the defendant and two codefendants were manufacturing amphetamines arranged with the seller of chloroform, used in the manufacturing process, to place a radio transmitter, *i.e.*, a "beeper," inside a chloroform container sold to a co-defendant. At first, the agents used visual observation and the beeper monitoring to follow the co-defendant's vehicle after he purchased the chloroform. Eventually, when they suspected their cover was no longer intact, they relied upon the beeper alone

to show the route of that vehicle, which ended at the defendant's secluded cabin in West Virginia. After conducting surveillance for three days, the agents obtained a search warrant for the cabin. The search revealed "a fully operable, clandestine drug laboratory." *Id.* at 279, 103 S.Ct. 1081. The defendants were charged with federal drug crimes.

The defendant moved to suppress the evidence found in his cabin on the ground that the agents had violated his Fourth Amendment rights by using the "beeper" placed in the chloroform container to follow the co-defendant's vehicle to the cabin. His argument was rejected at the trial level but accepted on appeal. The Supreme Court reversed. It noted first that application of the Fourth Amendment depends upon whether the person invoking it can claim a legitimate expectation of privacy. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). It observed that "[t]he governmental surveillance conducted by the means of the beeper in this case amounted to principally following an automobile on public streets and highways," and that

> "[o]ne has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view."

*Knotts, supra,* 460 U.S. at 281, 103 S.Ct. 1081 (quoting *Cardwell v. Lewis,* 417 U.S. 583, 590, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (plurality)).

The Court reasoned that when the co-defendant "traveled over the public streets he voluntarily conveyed to anyone who wanted to look the fact that he was traveling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto private property." *Id.* at 281–82, 103 S.Ct. 1081. It observed that, although the defendant had a reasonable expectation of privacy inside his cabin, that expectation did not "extend[ ] to the visual observation of [the co-defen-

dant's] automobile arriving on his premises after leaving a public highway, nor to movements of objects such as the drum of chloroform outside the cabin in the 'open fields.'" *Id.* at 282, 103 S.Ct. 1081 (quoting *Hester v. United States,* 265 U.S. 57, 58, 44 S.Ct. 445, 68 L.Ed. 898 (1924)). Ultimately, the Court concluded that

> [v]isual surveillance from public places along [the co-defendant's] route or adjoining [the defendant's cabin] would have sufficed to reveal all of these facts to the police. The fact that the officers in this case relied not only on visual surveillance, but on the use of the beeper to signal the presence of [the co-defendant's] automobile to the police receiver, does not alter the situation. *Nothing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case.*

460 U.S. at 282, 103 S.Ct. 1081 (emphasis added). *See also Gibson v. State,* 138 Md.App. 399, 414–17, 771 A.2d 536 (2001) (holding that a person has no reasonable expectation of privacy in his location within a public space).

The GPS tracking device in the case at bar is simply the next generation of tracking science and technology from the radio transmitter "beeper" in *Knotts,* to which the *Knotts* Fourth Amendment analysis directly applies. The appellant and his wife did not have a reasonable expectation of privacy in their location as they traveled on public thoroughfares. With the transmission from the GPS device, Trooper Bachtell was able to locate Joanne Stone's pickup truck as she was driving it on a public road, where she had no reasonable expectation of privacy, and where she could be seen by the trooper or anyone else. Under *Knotts,* the use of the GPS device could not be a Fourth Amendment violation, and hence further inquiry about it, on cross-examination of Trooper Bachtell, would not have led to relevant information.

Use of the cell phone "ping" information also was not relevant. The "ping" information revealed that the appellant's

cell phone was located, at that very time, somewhere "within a two mile radius of the Frederick County Detention Center." Using that information, Trooper Bachtell drove on the public roads in the vicinity of the detention center and saw, outside on a motel parking lot, in full public view, a vehicle registered in the appellant's name. Thus, the cell phone "ping" information, like the GPS tracking information and the beeper information in *Knotts*, served to narrow the area of public space in which to look for the appellant, his vehicle, or both.

In *In the Matter of the Application of the United States for an Order Authorizing the Installation and Use of Pen Register and a Caller Identification System on Telephone Numbers*, 402 F.Supp.2d 597, 604–05 (D.Md.2005), the court held that, to use real time cell phone "ping" technology to obtain evidence of a crime, the Fourth Amendment requires the government to obtain a warrant by showing probable cause to believe a crime has been or is being committed. In the case at bar, however, the cell phone "ping" technology was not being used to obtain evidence with which to generate probable cause. As we have explained, the investigating officers already had probable cause to believe that the appellant had committed burglary and felony theft. They were using the cell phone "ping" technology merely to find the appellant so they could take him into custody, already having probable cause to support an arrest, and not to gain information that would furnish probable cause to arrest. Moreover, they were not using the technology to locate the appellant in a private space. They used it only to narrow the area of public space in which to search for the appellant to place him under arrest. In other words, the cell phone "ping" technology was being used as a tracking device, like the GPS, to locate the appellant in public.

For the reasons we just have discussed, the appellant did not have a reasonable expectation of privacy in his location in the public, and, more specifically, in a vehicle riding on public roads, and therefore evidence about the use of the GPS device and the cell phone "ping" information merely to locate him in public, which just as well could have been done by human

visualization—though less efficiently—was not relevant to the appellant's Fourth Amendment-based suppression motion.

### III.

The appellant next contends that in closing argument the prosecutor impermissibly vouched for the credibility of Trooper Martin Speak, who was the State's sole fact witness on the charge of second degree assault. Trooper Speak testified that, after the appellant was arrested and transported to the station house, he escorted him from an interview room to a holding cell. Along the way, the appellant became very angry and refused to continue walking. According to Trooper Speak: "I grabbed [the appellant's] right elbow with [my] left hand and told him to walk with me. He pulled away from me at that time and swung his right arm towards my face." Trooper Speak called for assistance; the appellant continued yelling and resisting the trooper's commands until Trooper Speak forced him to the ground and handcuffed him. It was based on those events, which were not witnessed by anyone else, that the appellant was charged with second-degree assault.

In closing argument, the prosecutor stated, with regard to the second-degree assault charge, "the information that was testified to you by Trooper Marty Speak, Trooper Speak, in my estimation was a very credible witness, told you plainly and clearly what happened." The prosecutor continued on to summarize Trooper Speak's testimony relating to the charge.

The appellant argues that, by his statement as quoted above, the prosecutor "impermissibly vouched for the credibility of [the State's] primary witness to the alleged assault."

■ This issue is not preserved for review because the appellant never lodged an objection to the argument at any time in the court below. *See* Rule 8–131(a); *Bates v. State,* 127 Md.App. 678, 703, 736 A.2d 407 (objection to prosecutor's closing argument is not preserved for appellate review when the objection is never lodged at trial), *cert. denied,* 356 Md. 635, 741 A.2d 1095 (1999). Acknowledging this procedural

defect, the appellant asks that we exercise our discretion to review the prosecutor's argument for plain error.

We reserve our discretion to exercise plain error review for instances when the unobjected to error is "compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial," *State v. Brady*, 393 Md. 502, 506–07, 903 A.2d 870 (2006) (quoting *State v. Hutchinson*, 287 Md. 198, 202, 411 A.2d 1035 (1980)). We see nothing compelling in the appellant's claim of plain error. The Court of Appeals has characterized improper prosecutorial vouching as a situation in which the prosecutor "make[s] suggestions, insinuation, and assertions of personal knowledge" as to a witness's credibility. *Walker v. State*, 373 Md. 360, 396, 818 A.2d 1078 (2003). In the present case, the prosecution did not assert any outside, personal knowledge of Trooper Speak such as: "I know Trooper Speak. We went to the same high school. Trooper Speak would never lie." Instead, the prosecutor merely commented in one isolated instance during closing argument that Trooper Speak's testimony in court appeared credible. Accordingly, we decline to exercise plain error review.

## IV.

Finally, the appellant argues that the sentencing court abused its discretion and "violated [his] constitutional right to counsel of his choice" by denying his motion for a continuance of the sentencing date.

The sentencing hearing was scheduled for, and took place on, August 2, 2006. At the outset of the hearing, the appellant asked to enter the appearance of private counsel, to strike the appearance of the public defender who had represented him at trial, and for a continuance of 30 to 60 days for private counsel to prepare for the sentencing hearing. In particular, the appellant wanted his private counsel to have time to arrange for certain witnesses to testify about his (the appellant's) drug and alcohol dependency. He told the court that he only recently had been able to borrow funds from his family to hire private counsel.

In response, the sentencing judge noted that he recently had had a conversation in chambers with both of the appellant's lawyers and the prosecutor on the same topic; and that he had denied the appellant's requests in chambers and would deny them once again in open court on the record. The judge pointed out that the sentencing hearing already had been postponed once so that Reisman could attend; the trial had concluded eight weeks prior; and the appellant had had ample time in those eight weeks not only to hire new counsel but also to gather his witnesses, all of whom were known to him well before the trial.

The appellant argues that the court abused its discretion by refusing to grant a continuance and by failing to "make it clear why denial of requested counsel could not be separated from a denial of a continuance." In addition, the appellant asserts that the court "violated [his] constitutional right to counsel of his choice." He asks that his sentences be vacated and the case remanded to the circuit court for a new sentencing hearing.

The State responds that the sentencing judge did not abuse his discretion by refusing to grant the continuance and that the appellant's second argument, regarding his "constitutional right to counsel of his choice," is not preserved for review because it was not raised below.

We agree with the State that the appellant's constitutional argument is not preserved for review. As stated above, ordinarily we will not consider an issue on appeal unless it "plainly appears by the record to have been raised in or decided by the trial court...." Md. Rule 8–131(a). When the defendant asserts one ground for an objection at trial, "he or she normally is limited to those grounds on appeal." *Klauenberg v. State,* 355 Md. 528, 541, 735 A.2d 1061 (1999); *accord Walker v. State,* 338 Md. 253, 262, 658 A.2d 239, *cert. denied,* 516 U.S. 898, 116 S.Ct. 254, 133 L.Ed.2d 179 (1995). Here, the appellant only asked for the sentencing judge to exercise his discretion to grant a continuance. He never asserted a constitutional right to counsel of his choosing.

We note, however, that even if this issue were preserved for review, it lacks merit. The right to counsel of one's choice "does not translate into an absolute right to counsel of the defendant's choosing." *Moore v. State,* 390 Md. 343, 377, 889 A.2d 325 (2005). " '[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.' " *State v. Miller,* 337 Md. 71, 86, 651 A.2d 845 (1994) (quoting *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)). The appellant offered nothing to show that his counsel throughout trial, including during sentencing, was ineffective. In addition, as the sentencing court pointed out, the appellant had ample time before the sentencing hearing to obtain new counsel and, regardless of that, to arrange for testimony by his witnesses.

"The decision whether to grant a request for continuance is committed to the sound discretion of the [sentencing] court." *Abeokuto v. State,* 391 Md. 289, 329, 893 A.2d 1018 (2006). On appeal, an appellant bears the burden to show that the lower court abused its discretion in refusing to grant a requested continuance. *Cottman v. State,* 165 Md. App. 679, 688, 886 A.2d 932 (2005); *accord Whack v. State,* 94 Md.App. 107, 117, 615 A.2d 1226 (1992), *cert. denied,* 330 Md. 155, 622 A.2d 1196 (1993).

The sentencing court below summarized well its reasons for refusing to grant the sentencing hearing continuance, including: the previous continuance, the eight-week interval since trial, and the fact that the potential testifying witnesses were known to the appellant well before trial. The court's refusal was not an abuse of discretion.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**